GRUE ET AL. *v.* COLLINS
SCHMIDBAUER, ETC. *v.* GRUE ET AL.

[No. 63, September Term, 1964.]

*Decided December 7, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*A. Frederick Taylor,* with whom were *Martin & Taylor* and *Robert J. Romadka* on the brief, for Anna D. Grue, et al., appellant and appellee.

*James H. Langrall,* with whom were *David R. Cohan* and *Weinberg & Green* on the brief, for Harry Lee Schmidbauer, appellant.

*Robert J. Thieblot* and *Samuel S. Smalkin,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for Robert Wilson Collins, appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

In this appeal from a judgment in their favor against one of the drivers in an automobile accident, the plaintiffs below, joined by the unsuccessful defendant, contend that the trial court erred in refusing to direct a verdict against the other defendant. They claim that the defendant Collins, in whose favor the jury found, was negligent as a matter of law, because he violated the boulevard law and changed lanes without ascertaining that the movement could be made with safety.

In deciding whether a motion for a directed verdict should have been granted, this Court considers the evidence in the light most favorable to the party against whom the verdict is asked. This is true whether the motion is asked by a defendant at the close of the plaintiff's case, *Polson v. Martin,* 228 Md. 343, 180 A. 2d 295 (1962) ; *Gross v. Baltimore Transit Co.,* 192 Md. 278, 64 A. 2d 147 (1949) or whether, as here, the directed verdict was requested by the plaintiffs, at the end of the testimony, against one of the defendants. *Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526.

In this light, the evidence against Collins may be summarized as follows :

Anna D. Grue and her husband, Louis, and Robert Wilson Collins and his wife, were neighbors. Together, they attended a dance sponsored by a neighborhood improvement association. They arrived about nine o'clock and left a little after midnight. While at the dance, Collins drank four or five bottles of beer and the Grues drank "highballs". When they left the dance, both couples proceeded in the Collins' station wagon to a restaurant called the "Ho Joy", about three miles away. Collins drove. He felt he was capable of operating the automobile safely. Mr. Grue concurred, stating he believed Collins to be sober and that he had no doubt about Collins' driving ability at any time during the evening. At the restaurant, Collins had a sandwich and tea but no one in the group consumed any alco-

holic beverages. The two couples left the restaurant about 2:30 A.M., went to the parking lot and entered the Collins' car with Collins driving. The parking lot of the restaurant has a private driveway which abuts into the most northerly, or parking lane, of the westbound lanes of Eastern Boulevard. Eastern Boulevard, in the vicinity of the restaurant, runs east and west. There are three westbound lanes separated from the eastbound lanes by a concrete median strip. The parking lane is eight feet wide; next to it is the "slow" lane and then the "fast" lane, each twelve feet wide. The highway is blacktop macadam, straight and level, with good visibility for a distance of two blocks in either direction. It is well illuminated at night and on the night of the accident weather conditions were clear and the roadway was dry. Eastern Boulevard is a designated boulevard with a posted speed limit of thirty miles an hour.

Collins intended to make a "U" turn to proceed east on Eastern Boulevard. To do so, he first had to drive west on Eastern Boulevard to Goeller Avenue to make the crossover. The intersection of Eastern Boulevard and Goeller Avenue is one hundred and seventy-four feet from the center line of the private driveway of the restaurant where it comes into Eastern Boulevard.

In leaving the parking lot, Collins turned his car around for the purpose of entering Eastern Boulevard. He pulled forward and stopped, straddling the sidewalk, and looked to his left. He was able to see as far as the traffic light at Mace Avenue, which is at least a thousand feet to the left, and noted that the light was red for Eastern Boulevard traffic. He saw an automobile coming toward him, approximately three-quarters of a block away, in the slow lane of traffic, and waited for it to pass before he pulled out into Eastern Boulevard. After the car passed, he pulled slowly into the intersection. He glanced to his left but his vision then was somewhat obscured by cars parked in the parking lane immediately to his left. Despite this fact, he was able to see into the fast lane for some two hundred feet and saw nothing coming.

There is a dispute in the testimony as to what happened thereafter. According to Collins, he started across the slow lane in

a westerly direction. He started to enter the fast lane about fifty feet from the parking lot driveway. He testified that his car was wholly in the fast lane about fifty feet before he reached the crossover. In the fast lane, he edged over to make the turn. He put on his directional signal or "blinker" one hundred and twenty or one hundred and twenty-five feet before he reached the crossover. From the time he glanced to his left as he reached Eastern Boulevard and began his turn to the right, he did not look behind him. He was unaware of the car driven by Schmidbauer until the collision.

At the moment of impact, the Collins' car was at an angle of approximately forty-five degrees to the concrete median strip. The front of the car had cleared the strip and was in the most northerly eastbound lane of Eastern Boulevard. The point of impact was on the left side of the Collins' car, immediately in front of the left rear wheel. Mr. Grue estimated Collins' speed from the restaurant driveway to the crossover at about ten to fifteen miles an hour. At the instant of impact, the vehicle was moving very slowly and appeared to be almost stopped. The impact was severe; Collins testified that the collision bent the frame of his car at the point of impact into a "U" approximately sixteen inches deep and two feet wide. Mrs. Grue was thrown by the impact from her seat at the right rear of the Collins' station wagon through its rear into the street, a distance estimated as between twelve and fifteen feet. Prior to the collision, the tailgate and rear window of the station wagon were closed and locked. According to Raymond Marsh, who had been at the dance and who saw the collision, the Collins' car was spun around and the impact lifted it about two feet off the ground. Grue testified to the same effect.

Schmidbauer, who was driving the other car in the collision, at the time of the accident, was seventeen years old and had owned the car he was driving for about seven days. He had stopped for the red light at Mace Avenue and found another vehicle beside him which he felt was trying to "test" him. When the light changed, the other car darted ahead of Schmidbauer but he caught up to it. Schmidbauer estimated his speed at the time he passed the other vehicle and when he put on his brakes to avoid hitting the Collins' car at forty miles an hour, which is

ten miles over the speed limit. He said he was one hundred and twenty feet from Goeller Avenue when he first saw the Collins' car.

At the time of the accident, Marsh was standing on Eastern Boulevard with his hand on the handle of his car, which was parked in the parking lane of the boulevard about two hundred and fifty feet from the scene of the accident. He was attracted to the passage of the Schmidbauer vehicle by reason of the impact of the air as it went by him, which he said "actually staggered" him.

Officer Crabbs, who was called to the scene of the accident shortly after it occurred, testified that the condition of Schmidbauer was normal and that Collins had been drinking. He did not testify that Collins was under the influence of liquor. The officer found no defects in either vehicle other than the damage resulting from the collision. He further testified that Schmidbauer's car laid down one hundred and twenty feet of skid marks and that there were no skid marks from Collins' car.

At the conclusion of the testimony, the Grues moved for a directed verdict against both Collins and Schmidbauer. The motion as to Schmidbauer was denied; the court reserved ruling as to the motion against Collins. Schmidbauer moved for a directed verdict in his favor, which was denied, but did not move for such a verdict against Collins. The jury's verdict was for the Grues against Schmidbauer but in favor of Collins. The Grues renewed their motion for a directed verdict against Collins, which was denied. Collins contends, in this appeal, that Schmidbauer has no standing to argue that the lower court erred in refusing the Grues' motion as to Collins. This is correct, but immaterial, for the Grues have standing to contest the denial of the motion, and Collins is not prejudiced by the fact that this Court has had the benefit of an additional argument, particularly in view of our conclusion. Schmidbauer, in the argument, has abandoned the contention that there was error in the denial of his motion for a directed verdict in his favor. On the evidence, in our opinion, his decision was sound.

After ruling on the motions for directed verdicts, Judge Lindsay carefully and fully instructed the jury as to the law on the various factual issues which he left for their determination.

The only matter for us to determine is whether the questions as to Collins' negligence should have been submitted to the jury. We shall first discuss the application of the boulevard law to the evidence, and then the issue as to the change in lanes.

## I

When a vehicle enters a paved public highway from an unpaved road or private driveway, its driver is under the double duty of coming to a full stop upon reaching the intersection and yielding the right of way to all vehicles approaching on the public highway. Code (1957) Article 66½, § 234. *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 121 A. 2d 188 (1956); *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939). We have given this section of the Code the same interpretation as has been given to the "boulevard" law, Article 66½, § 233. *Zeamer v. Reeves,* 225 Md. 526, 171 A. 2d 488 (1961); *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570 (1956). The duty of the unfavored driver to yield the right of way extends through the intersection, and to traffic approaching on the favored highway during its passage past the intersection. The fact that a collision occurs outside the intersection does not of itself bar the applicability of the boulevard law if the collision is the result of a violation of that law. *McDonald v. Wolfe,* 226 Md. 198, 172 A. 2d 481 (1961); *Schwartz v. Price,* 215 Md. 43, 136 A. 2d 749 (1957).

However, once the entering car has cleared the intersection and reached a point where it does not interfere with the favored driver's right of way through the intersection, the boulevard law ceases to be applicable. *McCann v. Crum,* 231 Md. 65, 188 A. 2d 537 (1963) and cases therein cited. Rigorous as are the duties imposed upon the unfavored driver in entering the public highway for the protection of the public and for the smooth flow of traffic, he is not a perpetual pariah; if he has observed the mandates of the law in entering the intersection and has become a part of the flow of traffic on the favored highway, he has the same rights and is subject to the same duties as the other drivers on that highway.

In this case, Collins had stopped before entering the intersection, and waited for an automobile, three-quarters of a block

away, to pass. The accident occurred about one hundred and seventy-four feet from the intersection. The factual situation here presented is analogous to that in *Ness v. Males*, 201 Md. 235, 93 A. 2d 541 (1953), where the point of impact was thirty-three feet from the intersection and, according to the unfavored driver when he entered the highway, the favored vehicle was two hundred feet away; it was held that the testimony permitted the inference by the jury that the accident was not an intersectional one.

On the record, viewing the testimony in the light most favorable to Collins, the trial court properly held that it was for the jury to determine whether or not Collins had cleared the intersection and reached a point where he did not interfer with Schmidbauer's right of way.

## II

The determination of whether or not the lower court should have granted a directed verdict against Collins on the ground that he violated the pertinent statutory provisions with respect to changing lanes presents more difficulty. Those provisions are as follows:

"§ 223. Driving on roadways laned for traffic.

Whenever any roadway has been divided into three or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

(a) *Single lanes.* — A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Code (1957), Art. 66½, § 223.
"§ 228. When signal required.

(a) *Turning.*—No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement.

(b) *Same—How given.*—An adequate signal of intention to turn right or left shall be given during not less than the last 100 feet traveled by the vehicle before turning.

(c) *Stopping or decreasing speed.* — No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal." Code (1957), Art. 66½, § 228.

The appellants rely heavily on *Wallace v. Fowler,* 183 Md. 97, 36 A. 2d 691 (1944). In that case, the car owned by Fowler entered the Ritchie Highway, a dual highway with two lanes of traffic in each direction, from a private entrance from whence it started south towards Annapolis. The driver of the Fowler car intended to cross over to the northbound lanes to return to Baltimore. The collision occurred at a crossover into which the Fowler car was turning. The driver of that car testified she did not see the Wallace car, although she looked in her mirror. It was clear that, if she had looked, she must have seen the other car. There was no evidence that the Wallace car was speeding. The judgment of the trial court, sitting without a jury, against Wallace the driver of the overtaking car, was reversed and judgment was entered in his favor. Judge Collins, for the Court, held that the negligence of the driver of the Fowler car was clear, and that there was no evidence of negligence on the part of Wallace.

In *Palmer Ford, Inc. v. Rom,* 216 Md. 165, 139 A. 2d 697 (1958), it was pointed out that in *Wallace* the overtaken car attempted to make a left turn into a crossover from the right hand lane, instead of first pulling into the left hand lane. In the present case, Collins testified that, after crossing the parking lane, he was "gradually angling" and then straightened out and proceeded down to the intersection. He said that he was wholly in the slow lane of traffic (corresponding to the right lane in *Wallace*) before he proceeded into the fast lane (the left lane in *Wallace*), and that his car was wholly in the fast lane about fifty feet before the crossover. In *Wallace,* there was no evi-

dence that the driver of the overtaking car was speeding or was negligent in any way. In the present case, it is undisputed that Schmidbauer was proceeding at an excessive speed, and the jury could have inferred, from the testimony, that he was racing, or "testing" himself against another car. Indeed, the evidence of Schmidbauer's negligence was so strong that the jury might well have inferred from all the testimony that, even had Collins been negligent in crossing from one lane to the other, his negligence was not a contributing factor to the accident. On the facts, *Wallace* is not controlling.

The Grues and Schmidbauer contend that Collins was negligent as a matter of law because, although he looked to his left before he entered the highway and waited for a car to pass, and glanced again to his left before entering the intersection, at the time of his second look to the left his view was partially obstructed so that he could not see beyond a point of two hundred feet. After entering the highway, he did not look behind him again and was unaware of the Schmidbauer vehicle until the collision. These facts tended to show Collins was negligent but, in our opinion, did not constitute ground for a directed verdict against him. There were other elements of the evidence to be considered in Collins' favor in the decision on the motion, including the testimony that he was proceeding very slowly in making the turn and had put on his directional signal about one hundred and twenty feet before reaching the crossover. See *Bricker v. Graceffo, et al.,* 236 Md. 558, 204 A. 2d 512, and *Katzel v. Clark,* 215 Md. 54, 137 A. 2d 125 (1957).

The Grues, to prevail on their motion for a directed verdict against Collins, had the burden of showing as a matter of law, not only that Collins was negligent but also that his negligence was a contributing or proximate cause of the collision. *Legum v. Hough,* 192 Md. 1, 63 A. 2d 316 (1949) ; *Holler v. Lowery,* 175 Md. 149, 161, 200 Atl. 353 (1938). Cases "in which courts may declare, as a matter of law, whether an act was the proximate cause of the injury, are limited to those in which but one inference can be drawn from the facts." *State v. Brandau,* 176 Md. 584, 589, 6 A. 2d 233 (1939). This is not such a case, either as to negligence or proximate causation. The motion for a directed verdict was properly denied.

*Judgment affirmed, with costs.*