CREASER *v.* OWENS ET VIR

[No. 83, September Term, 1972.]

*Decided December 6, 1972.*

The cause was argued before BARNES, SINGLEY, SMITH and DIGGES, JJ., and WILLIAM J. O'DONNELL, Associate Judge of the Supreme Bench of Baltimore City, specially assigned.

*Laurence T. Scott,* with whom were *Brault, Scott & Brault* on the brief, for appellant.

*Thomas P. Meehan,* with whom was *Michael K. Heaney* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

In this case, we are once again asked to determine the relative rights and responsibilities of motor vehicle operators under the "boulevard rule." That law, which at the time of the accident involved here was codified in the Maryland Code (1957) as Art. 66½, § 233,[1] commands that a driver upon approaching a "through highway"[2]

---

1. It is now codified as Art. 66½, § 11-403, Code (1957, 1970 Repl. Vol.).

2. Art. 66½, § 2 (60), Code (1957), applicable at the time of this accident defined a through highway as:

"(60) Through Highway. Every highway or portion

from an unfavored road must stop and yield the right of way to all traffic already in or which may enter the intersection during the entire time the unfavored driver encroaches upon the right of way; this duty continues as long as he is in the intersection and until he becomes a part of the flow of favored travellers or successfully traverses the boulevard. *Cornias v. Bradley,* 254 Md. 479, 255 A. 2d 431 (1969). All of the many "boulevard rule" decisions of this Court have rigorously and consistently guarded the favored driver's right of way at boulevard intersections. And, although these decisions have at times been criticized as harsh, confusing, or overprotective,[3] the rule has not been judicially undermined or legislatively modified.[4] Despite the consistency of our many opinions construing the "boulevard rule" there have apparently been lingering doubts about the absoluteness of its application and attempts to create new exceptions to it. We hope that this decision, at least until the "boulevard rule" is modified by the Legislature, will finally remove all doubts about the rule's application and dis-

thereof at the entrances to which vehicular traffic from intersecting highways is required to stop and yield right of way before entering or crossing the same and when stop signs are erected as provided in this article."
It has been redefined in the new Motor Vehicle Code, effective January 1, 1971, codified as Art. 66½, § 1-198. This new definition now reads:
"§ 1-198. Through highway.
Through highway means every highway or portion thereof on which vehicular traffic is given preferential right-of-way, and at the entrances to which vehicular traffic from intersecting highways is required by law to yield right-of-way to vehicles on such through highway in obedience to either a stop sign, a yield sign, or a yield-right-of-way sign when such signs are erected as provided in this article."
3. *See, e.g.,* Cooper v. Allen, 243 Md. 9, 14, 219 A. 2d 920 (1966) (Hammond, C. J. dissenting). *See also* Webb, *Bothersome Boulevards,* 26 Md. L. Rev. 111 (1966); Comment, *Boulevard Rule Overextended?,* 23 Md. L. Rev. 172 (1963).
4. We note that the decisions of this Court become a part of the law and continue as such unless overruled by statute. Sonnenburg v. Monumental Motor Tours, 198 Md. 227, 81 A. 2d 617 (1951). Although the Legislature recently revised and completely recodified the Motor Vehicle Code, effective January 1, 1971, the "boulevard rule" was continued in force without substantial change. Art. 66½, § 11-403, Code (1957, 1970 Repl. Vol.).

courage the belief that there are other exceptions not already recognized by our case law.

This suit began in the Circuit Court for Montgomery County when Martha Owens filed her declaration [5] against Frank Creaser seeking damages for injuries sustained when the school bus she was operating was struck by an automobile driven by Creaser. At the trial of this case, Judge Pugh, after concluding that Mrs. Owens was contributorily negligent as a matter of law, granted Creaser's motion for a directed verdict which was made at the close of the plaintiff's case. On appeal to the Court of Special Appeals, that court, in a 4-3 decision, reversed the judgment and remanded the case for a new trial. *Owens v. Creaser*, 14 Md. App. 593, 288 A. 2d 394 (1972). The majority concluded that an unfavored driver is not always contributorily negligent as a matter of law when involved in an accident with a favored driver in a boulevard intersection. They held that a jury question was presented when, "due to the physical facts," reasonable minds could differ as to whether Mrs. Owens proceeded into the boulevard intersection non-negligently. And, therefore, she was "entitled to have a jury assay the quality of her conduct in light of the duties that were imposed upon her." The minority protested this result stating the majority was carving out an exception to the "boulevard rule" where, in fact, none exists. We granted Creaser's petition for certiorari in order to review this interpretation of the "boulevard rule" and its application to the facts here. We conclude that, as harsh as it may seem, no such exception to the "boulevard rule" exists which would permit recovery by Mrs. Owens. We, therefore, reverse the judgment of the Court of Special Appeals and reinstate the judgment of the trial court.

The facts of this case and the inferences deducible therefrom, considered in the light most favorable to Mrs. Owens, appellee here (the party against whom the verdict was directed), reveal that on March 9, 1970, she

---

5. Martha's husband, Kenneth, was joined as a party plaintiff seeking damages "for loss of consortium of his wife."

was employed as a Montgomery County school bus driver. On that morning, she left her home shortly before 7:00 a.m. and drove the bus in an easterly direction on Stewartown Road toward its "T" intersection with Goshen Road en route to her first stop to pick up some school children. Vehicles proceeding on Stewartown Road are unfavored at that road's intersection with Goshen Road as they are controlled by a stop sign. Goshen Road, the favored boulevard, is a two lane blacktopped way, approximately 20 feet wide, runs roughly north and south and has a posted speed limit of 40 miles per hour. At this intersection, the driver of a vehicle approaching as Mrs. Owens did has a visibility to her left, a northerly direction, of not more than 200 feet as a more expansive line of vision is prevented by a hill and a curve in the road. The stop sign on Stewartown Road is placed about 8 feet west of the intersection and a driver's vision at this point is further obstructed by a bank, large trees and bushes.

Appellee testified that she intended to make a left turn onto Goshen Road. Initially she stopped at the sign, then slowly "creeped out" and stopped again just before entering the boulevard. There, she once more checked traffic conditions to both sides. Seeing no traffic, but maintaining a vigilance to the north, she began to maneuver the bus through a left turn by placing it in second gear and starting forward at about 5 miles an hour. When the front of the bus had reached the center of Goshen Road, she saw the Cadillac driven by Creaser, appellant, jump over the crest of the hill at a rapid rate of speed, estimated by her to be about 60 miles per hour. In an attempt to avoid what appellee considered an imminent accident, she tried to accelerate her 30 foot bus so as to clear Creaser's lane, but her efforts were unsuccessful and the collision occurred. The front of the car struck the left front wheel of the bus and the impact of the crash turned the bus around and propelled appellee out of her "seat belt and seat."

A Montgomery County police officer, Donald Crowley,

investigated the accident and at trial his testimony placed the point of impact 1½-2 feet north of the northernmost edge of Stewartown Road and 5-6 inches into the northbound traffic lane on Goshen Road. He measured 166 feet of skid marks made by Creaser's vehicle, 145 feet of which were in appellant's southbound lane of traffic but the last 17 feet before impact and 4 feet after impact had crossed over the dividing line of the highway. Another witness, Charles Frazier, seated in his car which was parked about 400 yards north of the crest of the hill, estimated the speed of Creaser's vehicle as between 60-65 miles per hour when it passed him and disappeared over the hill.

Confronted with this factual pattern, the majority of the seven-judge panel hearing the case in the Court of Special Appeals decided that "it was possible, indeed probable, for a finder of facts rationally to conclude, that due to the physical facts, the unfavored driver was not negligent." We do not accept this conclusion. We have reviewed the more than fifty opinions of this Court which have considered the "boulevard rule," and in none has there been any suggestion that the topography of an area which limits an unfavored driver's view of travellers on the favored highway would relieve him of the heavy responsibility placed on him by the stringent requirements of this law. We will not undertake the Herculean task of discussing fully all of these prior decisions of this Court, but will just note that they have all jealously guarded and upheld the favored driver's right of way on the favored boulevard. In fact, Maryland cases seem to go as far as any of our sister states in upholding such rights of travel. *Brown v. Ellis,* 236 Md. 487, 495, 204 A. 2d 526 (1964).

The essence of these decisions, when distilled to their purest form, leaves no doubt that the duty of the unfavored driver to yield the right of way extends to traffic on the whole of the favored road and the driver on the favored highway has a right to assume that he will do so. *Dunnill v. Bloomberg,* 228 Md. 230, 179 A. 2d 371

(1962) ; *Ness v. Males,* 201 Md. 235, 93 A. 2d 541 (1953) ; *Baltimore Transit Co. v. O'Donovan,* 197 Md. 274, 78 A. 2d 647 (1951). When the operator of a vehicle enters the favored highway in disregard of these explicit and mandatory rules and collides with another vehicle approaching thereon, the collision must be at least partially attributed to his negligence. *Blinder v. Monaghan,* 171 Md. 77, 188 A. 31 (1936). It is firmly established in this State that when the "boulevard rule" is applicable the unfavored driver is negligent as a matter of law when sued or contributorily negligent as a matter of law when suing. This does not automatically mean that the unfavored driver will be liable for damages in a case he is defending or unable to recover in a case in which he is the plaintiff, but then, in order to prevail, other factors must be present—either he must be able to establish that the favored driver was contributorily negligent or his claim must be rescued by the doctrine of last clear chance. Of course, once the unfavored driver has entered the flow of favored traffic he is entitled to the same rights and subject to the same duties as other drivers on the highway. *Grue v. Collins,* 237 Md. 150, 157, 205 A. 2d 260 (1964). However, until he attains that status, neither excessive speed by the favored driver nor the obstructed vision of the unfavored driver will be heard as an excuse for his failure to yield the right of way. *See, e.g., Dunnill v. Bloomberg,* 228 Md. 230, 179 A. 2d 371 (1962) ; *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961) ; *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 121 A. 2d 188 (1956).

To expand our discussion of this law, we again focus on what was so aptly stated for this Court by Judge Ogle Marbury in *Shedlock v. Marshall,* 186 Md. 218, 46 A. 2d 349 (1946), more than twenty-five years ago but which may have been lost sight of in the ensuing period of time:

> "What the statutes, as interpreted by [all the Maryland] decisions, mean is that a driver

who enters, from an unfavored highway, an intersection with a favored boulevard or arterial highway where there are no traffic controls *must yield the right of way to all the traffic he finds there during the entire time he is there. If he does not, and a collision results, he is at fault and cannot recover against the other driver unless the doctrine of last clear chance enters the case. So far as his rights as a plaintiff are concerned, it makes no difference what the other party does in the first instance. He is negligent because he has not yielded the road. Being negligent himself, his action is barred.* But when he is made a defendant in an action for damages resulting from the collision, he can always show that the other party was also guilty of negligence contributing to the accident, and if he succeeds in this, no verdict can be obtained against him. Then both parties are negligent." (Emphasis added.)

In order to make crystal clear our holding here, we emphasize that if an unfavored driver is involved in an accident with a favored vehicle under circumstances where the boulevard law is applicable then in a suit based on that collision the unfavored driver is deemed to be negligent as a matter of law. And, if the unfavored driver is a plaintiff, his suit is defeated unless the doctrine of last clear chance rescues his claim. *See, Trionfo v. Hellman,* 250 Md. 12, 241 A. 2d 554 (1968) ; *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939). Whereas, if the unfavored driver is a defendant he is liable except in the rare case when the issue of contributory negligence on the part of the favored driver is properly submitted to a jury, *i.e.,* whether he was guilty of negligence that was a proximate cause of the accident. *See Brown v. Ellis,* 236 Md. 487, 204 A. 2d 526 (1964) ; *Dunnill v. Bloomberg,* 228 Md. 230, 179 A. 2d 371 (1962) ; *Green v. Zile,* 225 Md. 339, 170 A. 2d 753 (1961) ; *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961). Though this law is

exacting and sometimes may seem harsh, its purpose is manifest. As we observed in *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 179, 49 A. 2d 537 (1946) :

> "The obvious and essential purpose of such rules is to accelerate the flow of traffic over through highways by permitting travellers thereon to proceed within lawful speed limits without interruption. That purpose would be completely frustrated if such travellers were required to slow down at every intersecting highway, and the vast sums which have been spent in their construction in an effort to accommodate the great volume of automobile traffic which is so indispensable a part of modern life, would be largely wasted. On the other hand the safety of the travelling public demands that the rules defining the relative rights of travellers on through highways and on highways intersecting them be clear, unmistakable and definite. *If the duty of stopping and of yielding right of way, is positive and inflexible, the inhibited traveller may know that he violates it at his risk, while the traveller on the favored highway may know that he may safely exercise the privilege of uninterrupted travel thereon which the statute gives. If, however, the relative rights of travellers on the two types of highway are held to depend upon nice calculations of speed, time and distance the rule would encourage recklessness and the privilege of uninterrupted travel would mean little more than the privilege of having a jury guess in the event of a collision whose guess was wrong.*" (Emphasis added.)

Appellee recognizes, as well she should, the stringent requirements of the "boulevard rule," but urges us to affirm the judgment of the Court of Special Appeals primarily in reliance upon the holdings of this Court in *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939) and

*Nicholson v. Page*, 255 Md. 659, 259 A. 2d 319 (1969).
Mrs. Owens can take no solace from the result reached
in *Nicholson* as we explicitly stated that under the pecu-
liar circumstances present there, the boulevard law was
not applicable. And, it was expressly stated that nothing
in that decision was intended as a departure from the
prior boulevard cases of this Court. Likewise, *Greenfeld*
and the subsequent cases which relied on it do not permit
an interpretation that could rescue appellee's claim. That
case recognized that it was possible to utilize the doctrine
of last clear chance in boulevard cases so as to permit
a recovery by an unfavored driver despite his initial
negligence in entering the boulevard. But, in *Greenfeld*
there was sufficient evidence to submit to the jury, under
proper instruction, to justify application of that doc-
trine. Here, no such evidence is advanced. Nevertheless,
appellee contends that *Greenfeld* carves out a more mean-
ingful exception in boulevard cases than just last clear
chance and postulates that there are circumstances un-
der which the unfavored driver's ingress into the favored
highway is not negligent even though the "boulevard
rule" is applicable. Mrs. Owens, in her brief, places re-
liance on the following dicta in *Greenfeld, supra* at 130:

> ". . . [The 'boulevard rule'] does not mean
> that the traveller on the favored highway has
> an absolute, unqualified, and complete right of
> way, at all times and under all circumstances,
> over persons who have lawfully entered the
> street, nor that he can proceed thereon in blind
> indifference to the danger to which his progress
> may expose others. There are many situations
> in which the driver of an automobile entering a
> favored from an unfavored highway may with-
> out negligence be endangered by traffic over
> and along the same; dense fog may make it im-
> possible for him to discover approaching cars,
> a child unexpectedly coming into the highway
> may cause him to stop or to go on, or some
> defect in the motor, the brakes, or the steering

gear of his automobile may prevent his controlling it, or curves or grades may prevent him from seeing approaching traffic."

But appellee stops quoting one line too soon. The final sentence of that paragraph states:

"So, where a traveller on a favored highway knows or should know that his progress will endanger a traveller entering the same from a restricted highway, he must exercise reasonable care to avoid injuring him."

This statement, which defines the duties of a favored driver, is entirely consistent with the Court's holding that the doctrine of last clear chance was applicable. Even if we assume that this language in *Greenfeld* authorized the carving out of another exception in boulevard cases, our later decisions have so whittled away at this that it can no longer be considered viable.[6]

Only in rare circumstances is the contributory negligence of a favored driver as a plaintiff subject to scrutiny by the fact finder and probably even rarer is submission of the question of recovery by an unfavored driver as plaintiff properly submitted to a jury under the doctrine of last clear chance. This rigorous duty of the unfavored driver is not excused by claims of excessive speed on the part of the favored driver or lessened because the unfavored driver's view is obstructed. On the contrary, such

---

6. Of the many decisions of this Court which have construed the "boulevard rule" none has recognized such an exception. Even in the very few cases in the thirty-three years since *Greenfeld* where the issue of the negligence of the favored driver *vel non* has been properly submitted to a jury, there has been evidence supporting a conclusion that the doctrine of last clear chance was applicable, or the issue was the contributory negligence of the favored driver. *See* Racine v. Wheeler, 245 Md. 139, 225 A. 2d 444 (1967); Brown v. Ellis, 236 Md. 487, 204 A. 2d 526 (1964); Green v. Zile, 225 Md. 339, 170 A. 2d 753 (1961); Harper v. Higgs, 225 Md. 24, 169 A. 2d 661 (1961); Sun Cab Co., Inc. v. Hall, 199 Md. 461, 86 A. 2d 914 (1952). *See also* Fowler v. De-Fontes, 211 Md. 568, 128 A. 2d 395 (1957). However, in none of these cases was there a determination that the unfavored driver was not negligent. And, at no time has the question of the contributory negligence of an unfavored driver been a jury question.

circumstances probably dictate greater caution. *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 121 A. 2d 188 (1956).

While under the facts of this case our holding may seem harsh, it is consistent with our prior decisions. For example, in *Cooper v. Allen,* 243 Md. 9, 219 A. 2d 920 (1966), the unfavored motorist entered the highway to make a left turn at a time when no other vehicles were approaching. The favored vehicle that ultimately collided with the unfavored car was stopped temporarily at a red light 150 feet away. However, before the turn was completed, the collision occurred. This Court held the unfavored driver contributorily negligent as a matter of law. In *Dunnill v. Bloomberg,* 228 Md. 230, 179 A. 2d 371 (1962) the favored driver sued the unfavored driver and judgment was for the defendant. This Court reversed that judgment despite the fact that defendant's view of the favored highway was obstructed by parked cars and the accident occurred when the favored driver veered to avoid striking the unfavored vehicle which was just edging out slowly to get a clear view of the highway. In *Shriner v. Mullhausen,* 210 Md. 104, 122 A. 2d 570 (1956) the unfavored driver was found to be negligent as a matter of law when he entered the favored highway and was involved in a collision with a vehicle that was evidently in a depression between two hills and could not be seen when the unfavored vehicle entered the boulevard. *See also Blinder v. Monaghan,* 171 Md. 77, 188 A. 2d 31 (1936). The application of this rule is chronicled in many Maryland cases and we need not examine them all here in detail. Suffice it to say that the absolute and unequivocal duty of the unfavored driver to stop and yield the right of way to all traffic during his entire passage through the favored highway is only tempered by the doctrine of last clear chance or a finding of contributory negligence on the part of the favored driver.

If the meaning and application of the "boulevard rule" is to be changed, it must be done by the Legislature and not by judicial fiat. In sum, we express approval of the

statement by Judge Gilbert for the dissenters in this case in the Court of Special Appeals:

"The ruling of the majority in this case erodes the Boulevard Rule and creates the defense that the unfavored driver could not see approaching traffic. Such a ruling requires the favored driver to know of obstacles at the intersection with an unfavored road and to take such precautions as may be requisite under the circumstances. Under the majority opinion, the favored driver no longer has the right to anticipate that an unfavored driver will not enter an intersection and deprive the favored driver of his right of way. The favored driver is now placed in the untenable position of having to be gifted with clairvoyance and extra-sensory perception in order to determine that the vision of the unfavored driver is not going to be hindered by hills, curves, walls, trees or other obstructions. In short, the majority render the Boulevard Law meaningless in its application to intersections where the unfavored driver's vision is obscured." *Owens v. Creaser,* 14 Md. App. 593, 610.

In the case here there is no question of the operation of the doctrine of last clear chance to rescue Mrs. Owens' claim; therefore, we reverse the judgment of the Court of Special Appeals and reinstate the judgment of the trial court.

> *Judgment of the Court of Special Appeals reversed and judgment of the Circuit Court for Montgomery County reinstated. Costs here and in the Court of Special Appeals to be paid by appellees.*