GARFIELD BECKWARD ET UX. *v.* RUSSELL
WILLIAM HENSEL ET AL.

[No. 311, September Term, 1973.]

*Decided March 19, 1974.*

The cause was argued before ORTH, C. J., and POWERS and DAVIDSON, JJ.

*Louis A. Fatkin,* with whom were *Fatkin & Brubaker* on the brief, for appellants.

*Robert H. Reinhart,* with whom were *Walsh, Walsh & Reinhart* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court. POWERS, J., concurs and filed a concurring opinion at page 557 *infra.* ORTH, C. J., concurs in part and dissents in part and filed an opinion concurring in part and dissenting in part at page 561 *infra.*

This suit was brought in the Circuit Court for Allegany County by Garfield Beckward and his wife, Jean Etta Beckward, against Russell William Hensel and his father,

Henry Charles Hensel. Beckward claims damages for injuries sustained when the automobile he was operating was struck by an automobile driven by Russell William Hensel. Beckward and his wife join in a claim for damage to the marital relationship. She made no claim for personal injuries. At the close of the plaintiffs' case Judge James S. Getty, with the consent of the plaintiffs, granted a motion for a directed verdict in favor of Henry Charles Hensel. At the close of the entire case Judge Getty, over the objection of the plaintiffs, granted a motion for a directed verdict in favor of Russell William Hensel on the ground that Garfield Beckward was contributorily negligent as a matter of law. This appeal followed.

The evidence, together with all reasonable and legitimate inferences deducible therefrom, considered in the light most favorable to the appellants, is as follows.[1] The accident occurred in the intersection of Vocke Road and Maryland Route 49. At this location Vocke Road is a four-lane highway which runs east and west, with two westbound lanes separated from two eastbound lanes by a median strip. The speed limit is 40 miles per hour. Maryland Route 49, which runs north and south, meets Vocke Road at an intersection controlled by a stop sign for traffic traveling north on Route 49. Cars moving north along Route 49 toward its intersection with Vocke Road travel downhill.

At the time of the accident Garfield Beckward was about 41 years of age, married, the father of two children who were no longer living at home, and employed. At about 1 a.m. on 1 February 1970 Mr. Beckward was driving his car, with his wife sitting on the front seat next to him and his brother, Harry Beckward, Jr., and his brother's companion, Anna Washington, sitting in the back seat. They were all going home after a dinner party celebrating Mrs. Beckward's

---

1. In deciding whether a motion for a directed verdict was properly granted, we must consider the evidence, together with all reasonable and legitimate inferences which may be deduced therefrom, in the light most favorable to the party against whom the motion was directed. Mike v. Service Review, Inc., 19 Md. App. 287, 298-99, 310 A. 2d 585, 592 (1973); Pratt v. Coleman, 14 Md. App. 76, 78, 286 A. 2d 209, 210-11 (1972); Mazer v. Stedding, 10 Md. App. 505, 506-07, 271 A. 2d 381, 381-82 (1970).

birthday. They were driving north on Maryland Route 49, approaching its intersection with Vocke Road. It was a clear night. It was dark. There was no artificial illumination and no moonlight. Beckward had his headlights on. There was no physical obstruction to his view of Vocke Road.

When Beckward reached the stop sign on Maryland Route 49 he came to a complete stop, and twice looked to his right and left. He saw no cars, and he slowly pulled out into the intersection. His wife and brother also were looking for traffic when he stopped at the intersection and saw none. As he reached the northernmost eastbound lane of Vocke Road, his car had attained a speed of about five miles per hour. He, his wife, and brother were still looking left. Suddenly, in the reflection of Beckward's car lights, they saw the front of a car coming toward them fast. When first observed the car was about twenty feet away from them. Its headlights were not turned on. By the time they saw the vehicle it was too late for Mr. Beckward to apply his brakes, take his foot off the gas pedal or do anything else to avoid the accident. There was a collision. The impact of the crash turned the Beckward vehicle around and threw Mr. Beckward and his wife from the car. Mr. Beckward was permanently paralyzed from the waist down. Mrs. Beckward and the other passengers sustained relatively minor injuries. The left front and side of the Beckward vehicle, including the fender, grill, bumper and engine, were smashed.

The appellee, Russell William Hensel, was 19 years old at the time of the accident. At about 1 a.m. on 1 February 1970 he was using his father's car to drive a girlfriend home. He had been traveling east along Vocke Road for about a half a mile at a speed of approximately 40 miles an hour. Before he reached its intersection with Route 49 Hensel saw the Beckward car, with its lights on, coming down Route 49. When first observed the Beckward car was approximately 300 feet from the intersection. Hensel continued to watch the Beckward vehicle until it entered the intersection, at which point he applied his brakes. He traveled 14 feet with his brakes locked and then the collision occurred. The Hensel car was propelled approximately 15 feet onto the median strip.

Hensel suffered relatively minor injuries, although his passenger was severely hurt. The right front of the Hensel car, including the fender and headlights, was smashed.

The appellee contends that appellant, the unfavored driver, was guilty of contributory negligence as a matter of law. He maintains that *Creaser v. Owens*, 267 Md. 238, 297 A. 2d 235 (1972) is controlling. We do not agree.

In *Creaser* a school bus driver was traveling east on an unfavored street at about 7 a.m. She came to a stop sign at which she stopped preparatory to turning north onto a boulevard. As a result of a hill and a curve in the road her view of the boulevard to the north was limited to 200 feet. In addition, her vision was somewhat obstructed by a bank, large trees and bushes. After her initial stop she slowly "creeped out" and stopped again before entering the boulevard. She looked again and, seeing no traffic but maintaining her vigilance to the north, she began to turn left, driving at about five miles an hour. When the front of the bus reached the center of the boulevard, she saw a Cadillac "jump" over the hill traveling at about 60 miles per hour. In an attempt to avoid an accident she tried to accelerate so as to clear the Cadillac's lane, but her efforts were unsuccessful and the collision occurred. A majority of the Court of Special Appeals held that the boulevard rule did not apply as a matter of law, and that the bus driver was entitled to have a jury assay the quality of her conduct in light of the duties imposed upon her. *Owens v. Creaser*, 14 Md. App. 593, 288 A. 2d 394 (1972).

The Court of Appeals reversed. In its opinion the Court of Appeals defined the boulevard rule as commanding that:

"[A] driver upon approaching a 'through highway' from an unfavored road must stop and yield the right of way to all traffic already in or which may enter the intersection during the entire time the unfavored driver encroaches upon the right of way; this duty continues as long as he is in the intersection and until he becomes a part of the flow

of favored travellers or successfully traverses the boulevard.

\* \* \*

"[T]he duty of the unfavored driver to yield the right of way extends to traffic on the whole of the favored road and the driver on the favored highway has a right to assume that he will do so.

\* \* \*

"This rigorous duty of the unfavored driver is not excused by claims of excessive speed on the part of the favored driver or lessened because the unfavored driver's view is obstructed. On the contrary, such circumstances probably dictate greater caution." (Footnote and citations omitted.) 267 Md. at 239-40, 243, 248-49, 297 A. 2d at 236, 238, 241.

In discussing the application of the rule, the Court quoted with approval from *Shedlock v. Marshall,* 186 Md. 218, 235, 46 A. 2d 349, 357 (1946), in which Chief Judge Marbury said:

"What the statutes, as interpreted by [all the Maryland] decisions, mean is that a driver who enters, from an unfavored highway, an intersection with a favored boulevard or arterial highway where there are no traffic controls must yield the right-of-way to all the traffic he finds there during the entire time he is there. If he does not, and a collision results, he is at fault and cannot recover against the other driver unless the doctrine of last clear chance enters the case. So far as his rights as a plaintiff are concerned, it makes no difference what the other party does in the first instance. He is negligent because he has not yielded the road. Being negligent himself, his action is barred. But when he is made a defendant in an action for damages resulting from the collision, he can always show that the other party was also guilty of negligence contributing to the accident, and if he

succeeds in this, no verdict can be obtained against him. Then both parties are negligent."

In explaining its reasons for these exacting and sometimes seemingly harsh rules, the Court pointed out that their purpose was to accelerate the flow of traffic over through highways by permitting travelers to proceed without interruptions. This purpose would be frustrated if the relative rights of travelers on through highways and those intersecting them were dependent upon "nice calculations of speed, time, and distance" so that travelers on through highways would be required to slow down at every intersecting highway in order to assure freedom from liability in the event of an accident. Finally, the Court of Appeals quoted with approval the statement by Judge Gilbert for the dissenters in the Court of Special Appeals as follows:

> "The ruling of the majority in this case erodes the Boulevard Rule and creates the defense that the unfavored driver could not see approaching traffic. Such a ruling requires the favored driver to know of obstacles at the intersection with an unfavored road and to take such precautions as may be requisite under the circumstances. Under the majority opinion, the favored driver no longer has the right to anticipate that an unfavored driver will not enter an intersection and deprive the favored driver of his right of way. The favored driver is now placed in the untenable position of having to be gifted with clairvoyance and extra-sensory perception in order to determine that the vision of the unfavored driver is not going to be hindered by hills, curves, walls, trees or other obstructions. In short, the majority render the Boulevard Law meaningless in its application to intersections where the unfavored driver's vision is obscured." 267 Md. at 250, 297 A. 2d at 241.

The Court of Appeals then applied the "Boulevard Rule" to

the facts of the case and held the unfavored driver-plaintiff to be contributorily negligent as a matter of law.

Notwithstanding the rigorous application of the boulevard rule in *Creaser*, the Court of Appeals reaffirmed the fact that there can be circumstances involving accidents at intersections in which the boulevard rule is inapplicable. *Creaser v. Owens, supra*, 267 Md. at 247, 297 A. 2d at 240. In *Nicholson v. Page*, 255 Md. 659, 259 A. 2d 319 (1969), the unfavored driver-plaintiff was proceeding west in his automobile. When he came to an intersection with a boulevard he stopped in obedience to the stop sign. He looked to his left and observed that traffic in the northbound lane of the boulevard was backed up behind a bus. The operator of the bus waved the plaintiff on. The plaintiff drove across the northbound lane in front of the bus and then looked to his right for southbound traffic. He saw nothing coming and proceeded to cross the southbound lane. As he did so a car which had been stopped 15 feet behind the bus in the northbound lane went around the bus on the left and proceeded to make a left-hand turn onto the unfavored street. The collision then occurred. The court said:

> "In the present case, the plaintiff did stop as required by law before entering Carey Street. He looked to his left and saw that northbound traffic was at a standstill in the northbound lane and would necessarily remain standing until the bus, as the first stopped vehicle occupying substantially all of the northbound traffic lane, moved forward. The bus driver waved the plaintiff on to cross the northbound lane thereby reasonably indicating to the plaintiff that the bus would not move forward, as, indeed, it did not. Having then substantially crossed the northbound lane of Carey Street, the plaintiff properly looked to his right to see whether or not there was any southbound traffic to which he was required to yield the right-of-way. Seeing no such southbound traffic (and there was none), he then proceeded to cross the southbound lane of Carey Street. In our opinion, it was not foreseeable

by the plaintiff that the defendant would drive his automobile from the standing position in the *northbound* lane of Carey Street, 15 feet behind the bus, cross into the *southbound* lane, contrary to the statutory requirement, and attempt to make a left-hand turn, contrary to the statutory requirement, into Ward Street. This unforeseeable and negligent act by the defendant was, as we have already indicated, the proximate cause of the collision and not the lawful passage of the plaintiff's vehicle across Carey Street." 255 Md. at 666-67, 259 A. 2d at 324.

The Court held that under these particular circumstances the boulevard rule was inapplicable. Therefore the unfavored driver-plaintiff was not contributorily negligent as a matter of law and could recover damages.

The same result was reached by this Court in *Riberkoff v. Fields*, 15 Md. App. 288, 289 A. 2d 859 (1972), where a collision occurred when a taxicab on the boulevard backed across the intersection and collided with the unfavored driver's car. There Judge Moylan, speaking for this Court, said:

"As in *Nicholson*, the appellee here did stop as required by law before entering Fayette Street. He looked to his right and saw no traffic approaching in a permitted westerly direction. He looked to his left and saw no traffic approaching in an easterly direction even in violation of the one-way mandate westbound. Any observation of the appellant's taxicab as it came in a southerly direction along Schroeder Street and turned right, or westbound, onto Fayette would have indicated that it was beyond the intersection and, indeed, moving away from it. In our opinion, it was not foreseeable by the appellee that the appellant would suddenly stop, shift into reverse and then, against the lawful flow of traffic, come backing all the way across the intersection. We cannot agree that the appellee

was, as a matter of law, guilty of contributory negligence. We therefore hold that the trial judge was correct in permitting the issues of both primary negligence and contributory negligence to go to the jury." 15 Md. App. at 292, 289 A. 2d at 861.

Thus this Court held the boulevard rule to be inapplicable. The unfavored driver-plaintiff was not held to be contributorily negligent as a matter of law and was permitted to recover from the favored driver.

Both of these decisions were bottomed on the Court's recognition of the fact that under certain circumstances the conduct of a favored driver could be such as to alter the relative rights and obligations of drivers at an intersection. A favored driver approaching an intersection in a direction opposite to that in which traffic is otherwise proceeding is not entitled to be protected by a right-of-way. Since his conduct makes it impossible for his presence on the highway to be anticipated by the unfavored driver, he has no right to assume that the unfavored driver will yield the right-of-way to him. Moreover, for the same reason, the unfavored driver has no duty to look for or yield the right-of-way to the favored driver. Both of these decisions acknowledge that the unfavored driver-plaintiff had done everything which could reasonably be expected of him in circumstances where the negligent conduct of the favored driver made it impossible for the unfavored driver to anticipate his presence on the highway. Therefore the unfavored driver's failure to look for and yield the right-of-way was excused and did not bar his recovery.

A careful analysis of the facts in the instant case reveals substantial differences from those in *Creaser* which materially affect the relative rights and obligations of the drivers at the intersection. In *Creaser* the unfavored bus driver's inability to see was caused by the physical characteristics of a site over which neither she nor the favored driver had any control. Her view of the boulevard was limited by a hill and a curve and her vision was further somewhat obstructed by a bank, large trees and bushes.

Since she was fully aware that the physical characteristics of the site interfered with her ability to see approaching vehicles, she had every reason to anticipate that a vehicle might approach which she might well be unable to see in time to yield the right-of-way. These circumstances dictated both that she exercise greater caution than would otherwise be required and that she understand that she proceeded at her own risk. In this case Mr. Beckward's view of the highway was not limited by any physical characteristics of the site. Indeed his view of the boulevard was totally unobstructed. His inability to see was caused by the negligent conduct of the favored driver, Mr. Hensel, who failed to turn on his lights.[2] He had no reason to anticipate that in the dead of night an unlit vehicle might approach which he would be unable to see. These circumstances required nothing more than the exercise of an ordinary degree of care on his part and were not such as to put him on notice that he was proceeding at his own risk. In *Creaser*, the favored driver, even though speeding, had no duty to be gifted with clairvoyance and extrasensory perception. He had no reason to anticipate that the view of an unfavored driver was going to be impeded by hills, curves, banks, trees, bushes or other physical obstructions, and therefore had a right to anticipate that an unfavored driver at any intersection would yield the right of way to him. In this case the favored driver, traveling along the boulevard with his lights out, saw the unfavored driver before he reached the intersection and watched him as he approached the stop sign. The favored driver knew or should have known that the unfavored driver might be unable to see his unlit car in time

---

2. Code (1957), Art. 66½, § 12-201 provides:

"Every vehicle upon a highway within this State at any time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 1,000 feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles, and further that stoplights, turn signals, and other signaling devices shall be lighted as prescribed for the use of these devices."

to yield the right-of-way, and therefore he had no right to anticipate that the unfavored driver would or could yield to him. In *Creaser* the favored driver's alleged negligence consisted of speeding, and therefore, if the issue of contributory negligence on the part of the unfavored driver-plaintiff were submitted to the jury, the determination of the relative rights of the travelers at the intersection would depend upon nice calculations of speed, time and distance. Here the favored driver's negligence consisted of a failure to turn on his lights. Therefore if the same issue were submitted to the jury, the favored driver's liability would depend upon a simple choice between two alternatives — whether or not the unfavored driver's failure to see and yield to an unlit car approaching on a dark, unilluminated highway was justifiable — and not on nice calculations of speed, time and distance.

We recognize that the facts in this case are not identical to those in *Nicholson* or *Riberkoff*. We are cognizant that in those cases the negligent conduct of the favored driver-defendant consisted in moving in a direction opposite to that in which traffic was otherwise proceeding, whereas here the favored driver was moving in the proper direction, albeit with his lights off. However, because in all three cases the effect of the favored driver's negligent conduct was to make it impossible for the unfavored driver to anticipate his presence on the highway, we view this as a difference in degree rather than kind. We see no reason to impose upon the unfavored driver a duty to be gifted with clairvoyance and extrasensory perception in order to determine that a favored driver is going to approach an intersection on a dark and unlit road with his headlights off.

In the final analysis the unfavored driver-plaintiff here, as in *Nicholson* and *Riberkoff*, did everything which could reasonably be expected of him under all of the circumstances. He stopped as required by law before entering the boulevard. He had his lights on as required by law. He properly looked to see whether there was traffic to which he was required to yield the right-of-way. Seeing no

such traffic, because the favored driver's lights were not on, he then proceeded to cross the eastbound lane while maintaining his vigilance to the left. In our opinion the fact that the favored driver-defendant would, contrary to statute, drive his automobile on a dark and unlit highway without turning on his lights was no more foreseeable in this case than was the negligent conduct of the favored drivers in *Nicholson* and *Riberkoff*. We believe that *Nicholson* and *Riberkoff* rather than *Creaser* control this case.

Accordingly we hold that under the particular facts and circumstances here involved the boulevard rule is inapplicable and the appellant is not guilty of contributory negligence as a matter of law. The trial court erred in directing a verdict in favor of Russell William Hensel and in failing to submit the issues of both primary negligence and contributory negligence to the jury.

Both the docket entries and the transcript show that a motion for directed verdict in favor of Henry Charles Hensel was granted on 22 March 1973 and that a similar motion in favor of Russell William Hensel was granted on 23 March 1973. However, an examination of the record shows that no final judgments were entered for or against any of the parties. Consequently the appeal was premature. *Stitzel v. Kurz*, 18 Md. App. 525, 540, 308 A. 2d 430, 438-39 (1973). As we are authorized to do by Maryland Rule 1071, we remand the case to the lower court for further proceedings necessary for determining the action upon its merits as if no appeal had been taken. The further proceedings shall include the prompt entry of final judgments in accordance with the directed verdicts granted by the trial judge in favor of Henry Charles Hensel, as to whom no issues were raised on appeal, and in favor of Russell William Hensel. For a period of thirty days after the entry of judgments the trial court shall have revisory power and control over such judgments under Maryland Rule 625(a). Upon a proper and timely motion the trial judge should strike the judgment and order a new trial as to Russell William Hensel, as to whom issues were raised on this appeal. We call attention to the provision in Rule 1071 that the order entered by this Court and the opinion on

which the order is passed shall be conclusive as to the points finally decided thereby.

> *Case remanded for the purpose of further proceedings in accordance with this opinion.*
> *Costs in the lower court to abide the result.*
> *Costs in this Court to be paid by appellee Russell William Hensel.*

*Powers, J., concurring:*

I concur in the opinion written for the Court by Judge Davidson, and in the result as expressed in our mandate. However, I wish to emphasize the reason why I do not consider the decision of the Court of Appeals in *Creaser v. Owens*, 267 Md. 238, 297 A. 2d 235 (1972) controlling here.

As one of the majority of this Court whose opinion in *Owens v. Creaser*, 14 Md. App. 593, 288 A. 2d 394 (1972) was reversed, I had felt that prior cases left open the possibility of an exception to the strict application of the boulevard rule, and I felt that if there were any exception, the facts of that case would fall within it.

The Court of Appeals, in a firm and clear opinion written by Judge Digges, dispelled any lingering thought of an exception to the boulevard rule. It said, at 244:

> "It is firmly established in this State that when the 'boulevard rule' is applicable the unfavored driver is negligent as a matter of law when sued or contributorily negligent as a matter of law when suing. This does not automatically mean that the unfavored driver will be liable for damages in a case he is defending or unable to recover in a case in which he is the plaintiff, but then, in order to prevail, other factors must be present — either he must be able to establish that the favored driver was contributorily negligent or his claim must be

rescued by the doctrine of last clear chance. Of course, once the unfavored driver has entered the flow of favored traffic he is entitled to the same rights and subject to the same duties as other drivers on the highway. *Grue v. Collins*, 237 Md. 150, 157, 205 A. 2d 260 (1964). However, until he attains that status, neither excessive speed by the favored driver nor the obstructed vision of the unfavored driver will be heard as an excuse for his failure to yield the right of way." (Citations omitted).

The Court went on to say, at 245-46:

"Though this law is exacting and sometimes may seem harsh, its purpose is manifest."

Certainty in the law has its own virtue, which ordinarily transcends in importance the occasional injustice which may result from unwavering application of a law which is both certain and strict. One whose duty is clear and certain, though it may be harsh, is better able to conform to it than one who understands it only vaguely.

The opinion of the Court of Appeals in *Creaser v. Owens, supra,* makes the boulevard rule serve well the fundamental purpose of all law — to accomplish the greatest good for the greatest number of people the greatest part of the time.

A further reference to *Creaser v. Owens, supra,* is necessary to point up what I consider to be the proper guide to decision in the case before us. The Court said, at 246-47:

"Appellee recognizes, as well she should, the stringent requirements of the 'boulevard rule,' but urges us to affirm the judgment of the Court of Special Appeals primarily in reliance upon the holdings of this Court in *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939) and *Nicholson v. Page,* 255 Md. 659, 259 A. 2d 319 (1969). Mrs. Owens can take no solace from the result reached in *Nicholson* as we explicitly stated that under the peculiar circumstances present there, the boulevard law was

not applicable. And, it was expressly stated that nothing in that decision was intended as a departure from the prior boulevard cases of this Court. Likewise, *Greenfeld* and the subsequent cases which relied on it do not permit an interpretation that could rescue appellee's claim. That case recognized that it was possible to utilize the doctrine of last clear chance in boulevard cases so as to permit a recovery by an unfavored driver despite his initial negligence in entering the boulevard. But, in *Greenfeld* there was sufficient evidence to submit to the jury, under proper instruction, to justify application of that doctrine. Here, no such evidence is advanced."

The Court pointed out, at 248, that the hint in *Greenfeld v. Hook*, 177 Md. 116, 8 A. 2d 888 (1939), that another exception may be carved out in boulevard cases had been so whittled away by later cases that it could no longer be considered viable.

Whenever evidence before the court shows conduct by a party which is claimed to be negligent, we judge that conduct in the light of the duty which the law imposes upon the party under the circumstances. But first we determine if there is or could be a proximate causal relationship between the conduct and the alleged breach of duty. If such a proximate relationship does not exist, then we must look to other facts, and to other principles of law, to decide whether there has been a breach of duty.

I need not repeat what Judge Davidson's opinion for this Court said about *Nicholson v. Page*, 255 Md. 659, 259 A. 2d 319 (1969). Although the collision in that case occurred in a boulevard intersection, the unfavored driver sued and recovered. The Court held that the boulevard rule was not applicable. It said, referring to the favored driver's conduct, at 667:

"This unforeseeable and negligent act by the defendant was, as we have already indicated, the proximate cause of the collision and not the lawful

passage of the plaintiff's vehicle across Carey Street."

It could not fairly be said that in *Nicholson* the Court of Appeals was merely making an expedient end run around the boulevard rule. It was clearly stating a rule which is not only consistent with the basic principles of negligence law, but which is required by justice and fairness. There is no difficulty in understanding that the law to be applied in any case is the law governing the conduct which proximately caused the harm.

In *Creaser v. Owens, supra,* the Court's discussion of the law followed this premise: " * * * when the 'boulevard rule' is applicable * * *." It pointed out, citing *Grue v. Collins,* 237 Md. 150, 205 A. 2d 260 (1964), that the rule is not applicable when the unfavored driver has entered the flow of favored traffic. Obviously, that status may or may not exist, depending upon resolution by the jury of disputed facts relating to position, speed, and other circumstances. Certainly not always, and probably rarely, could a trial judge rule as a matter of law that the unfavored driver had or had not entered the flow of favored traffic. The question, then, would be for the jury, whose precise inquiry would be, "Was the proximate cause of the harm the unfavored driver's breach of his duty under the boulevard rule, or was it the favored driver's breach of some other duty?"

When the boulevard rule is applicable, it is virtually absolute, but, accepting the efficacy of that view, we still may not hold it applicable to every collision that happens in the intersection of a favored and an unfavored highway. The key is proximate cause. If the harm was proximately caused by breach of the duty imposed by the boulevard rule, then the rule must be strictly applied. But if the proximate cause was the breach, by either party, of some other duty, then the boulevard rule is not applicable.

To postulate an extreme example, if the unfavored driver, stopped and dutifully waiting for favored traffic to pass, is struck from the rear and propelled into the path of a favored vehicle, the unfavored driver has breached no duty — the

proximate cause of that collision lies elsewhere. I see no difference in principle when the favored driver is proceeding in the dark without lights and is thus invisible. Such conduct on the part of that favored driver is no less unforeseeable than the conduct of the favored driver in *Nicholson v. Page, supra.*

It is significant that in every boulevard case that might be considered strict or harsh, conditions that contributed to the accident were observed or observable by the unfavored driver, and rather than excusing his failure to obey his rigorous duty, probably dictated greater caution.

Of course, we do not resolve disputed facts. Nor, in a jury case, does the trial judge. Beckward, and other witnesses presented in his case, testified that the Hensel car had no lights burning, and in the darkness was not visible until it was too late to avoid the collision. Hensel, and other witnesses for him, testified directly or gave evidence tending to show that his lights were on. I think Beckward was entitled to have the jury find the true facts, and from them determine the proximate cause of the collision.

*Orth, C. J., concurring in part and dissenting in part:*

I concur in the action of the majority of the panel in remanding the case for the entry of final judgments in favor of Henry Charles Hensel and Russell William Hensel in accordance with the directed verdicts granted by the trial judge. I agree that *Stitzel v. Kurz,* 18 Md. App. 525, *cert. den.* by the Court of Appeals of Maryland, 9 October 1973, permits this course of action. I dissent from the mandate of the majority to the trial judge to strike the judgment and order a new trial as to Russell William Hensel. I would affirm the judgment as to him as well as the judgment as to Henry Charles Hensel.

I do not agree with the opinion of Davidson, J. that *Creaser v. Owens,* 267 Md. 238 is not controlling. Judge Davidson would carve out an exception to the boulevard rule which, in my opinion, *Creaser* does not permit. As Powers, J. states in his concurring opinion in this case: "The Court of

Appeals, in a firm and clear opinion written by Judge Digges, dispelled any lingering thought of an exception to the boulevard rule."

I do not agree with Judge Powers's view, however, that under the facts of this case, the boulevard rule is not applicable. The unfavored driver proceeded onto the boulevard and had not entered the flow of favored traffic when the collision occurred. I think the court below was correct in ruling that the unfavored driver was contributorily negligent as a matter of law.

The message of *Creaser* is that the boulevard rule is not to be eroded. See *Tippett v. Quade*, 19 Md. App. 49, 59. Both the opinion of Judge Davidson and the opinion of Judge Powers erodes it, although on a different basis of justification. I think both are wrong.