## STEVEN THOMAS GAZVODA, ETC. ET AL. v. BARRY CHARLES McCASLIN ET AL.

[No. 724, September Term, 1976.]

*Decided July 7, 1977.*

The cause was argued before THOMPSON, POWERS and MELVIN, JJ.

*David E. Manoogian,* with whom were *Clark & Cromwell, P.A.* on the brief, for appellants.

*William H. Clarke,* with whom were *W. Barry Wraga* and *Galiher, Clarke, Martell & Donnelly* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

Our holding in this appeal is governed by Maryland's so-called "boulevard rule", as applied to an intersection collision which occurred between two vehicles in Montgomery County on 23 January 1973. We shall reverse the judgment entered by the Circuit Court for Montgomery County for the employer of the favored (but possibly law-violating) driver, and remand the case for further proceedings.

Steven Thomas Gazvoda, 11 years old at the time of the accident, and his mother, Marjorie Gazvoda, as next friend and individually, filed suit for damages in the Circuit Court for Montgomery County against Barry Charles McCaslin [1] and his employer, Flow Laboratories Incorporated.

After interrogatories had been propounded by Flow Laboratories to Steven and to Mrs. Gazvoda, and each had filed answers, and the deposition of each plaintiff as well as Officer Dale G. Tippery had been taken, Flow Laboratories filed a motion for summary judgment, accompanied by a memorandum of points and authorities. The Gazvodas filed their opposition to the motion, with points and authorities.

The motion was submitted to Judge John J. Mitchell on the memoranda and arguments of counsel. The motion was granted. The clerk entered judgment in favor of the defendants [2] for costs.[3] The plaintiffs appealed.

Evidence before the court most favorable to the appellants, the parties against whom the motion was made, showed that at about 5:00 P.M. on 23 January 1973 Steven

---

1. McCaslin was never served. After two non ests the clerk made an entry, "Lie Dormant Under Rule" as to McCaslin. See Maryland Rule 112. No appearance or pleading was ever filed for McCaslin. Appellants say "he has been effectively dropped from the case." We treat him so, to avoid problems under Rule 605 a.

2. Since only Flow Laboratories made the motion, the use of the plural was probably inadvertent.

3. Plaintiffs filed a timely motion to revise the judgment, and supported it with a deposition containing "new evidence". The motion to revise was denied. The appeal was timely as to both orders, and both were briefed and argued. Because we are reversing the judgement, there is no need to consider the order denying the motion to revise it.

Gazvoda rode his bicycle west on Wexford Road to its intersection with Beach Drive, made a left turn, and was riding south in the southbound lane of Beach Drive when he was hit by appellee's truck, which was traveling north in the southbound lane. Steven sustained serious injuries.

Wexford Road, on an east-west alignment, forms a "T" intersection at the east side of Beach Drive, which runs north and south. Wexford Road is divided by a grass median strip as it approaches the east side of Beach Drive. There is a stop sign against westbound traffic on Wexford Road at the entrance to Beach Drive. Beach Drive, the "through highway", is not divided. It consists of a single pavement, providing one lane for northbound traffic, and one lane for southbound traffic.

As Steven, on Wexford Road, approached Beach Drive, he was faced with the stop sign at Beach Drive. He paused and looked to the left and to the right. To the right it was completely clear. To the left the nearest thing he saw was a green car, coming north, about 30 yards away. He did not come to a complete stop, but proceeded into the intersection. After he crossed the first half of Beach Drive, he made a left turn into the southbound lane. He made his turn easily in front of the green car. As Steven put it:

> "* * * I made a left turn which put me into the flow of traffic going towards, I guess, Knowles Avenue — in that direction and as I turned over I went into the other lane and when I looked up — right after I looked up, I saw a white truck almost directly in front of me out of the — like directly in front of me and I thought, 'Is it going to make a right turn or left turn — what is it doing in my lane?' And, 'Why doesn't it move out of my way?' And, 'What should I do to avoid getting hit?' Then I fainted."

Officer Tippery, who investigated the accident, gave deposition testimony which could be interpreted as suggesting that the impact took place in the northbound lane. His evidence was far from illuminating. The officer's

conclusion that the impact occurred on the east side of Beach Drive must be drawn from this question and answer:

> "Q Did you find that the accident occurred on the side of the street that the truck was driving on on Beach Drive?
> "A Right."

He said that the skid marks were on the southbound lane, but explained that "The truck had crossed the center line of the road but the skid marks did not appear until after the point of impact." When asked to locate the point of impact with relation to the intersection, the officer said:

> "Actually it would have been a little south of the intersection. Wexford Drive is divided by a median strip and it would have happened more so within the boundaries of the median strip than the roadway itself."

Appellants argue that there was conflicting evidence on several issues material to their right to recover, and those issues should not have been decided on a motion for summary judgment. They also argue that the boulevard rule does not apply, because the proximate cause of the accident was the truck driver's violation of the statute by driving on the wrong side of the road; because Steven had cleared the intersection and entered the flow of traffic; and because the truck driver had the last clear chance to avoid the collision.

Undaunted by the genuine disputes of fact generated by the conflicting evidence, and secure in the knowledge that the disputed issues were not material to the result, because the boulevard rule rests upon a statutory and judicial foundation as solid and firm as the Rock of Gibraltar, appellee contends that because Steven was the unfavored driver, he was contributorily negligent as a matter of law, and that the summary judgment was properly granted.

The statute, Code, Art. 66½, § 11-403 (b) says:

> "The driver of a vehicle shall come to a full stop as required by this subtitle at the entrance to a

> through highway and shall yield the right-of-way to other vehicles approaching on the through highway."

A bicycle is a vehicle. Code, Art. 66½, §§ 1-104 (a), 1-209, 11-202, *Richards v. Goff,* 26 Md. App. 344, 338 A. 2d 80 (1975).

Perhaps every case ever decided by the Court of Appeals of Maryland in which it applied, or declined to apply, the boulevard rule was cited and categorized in that Court's recent decision in *Dean v. Redmiles,* 280 Md. 137, 374 A. 2d 329 (1977). Judicial expressions concerning the rule were traced from several cases even earlier than *Greenfeld v. Hook,* 177 Md. 116, 8 A. 2d 888 (1939), generally looked upon as the grandfather case, down through the latest published decisions of the Court of Appeals. Judge Smith, writing for the Court in *Dean v. Redmiles, supra,* summarized, at 147:

> "Certain principles emerge from those cases. The boulevard rule is intended to expedite the flow of traffic on the boulevard. * * * The duty of an unfavored driver to stop and yield the right-of-way is mandatory, positive, and inflexible. * * * Accordingly, an unfavored driver violates this requirement at his own risk. Thus, unless the doctrine of last clear chance is involved, an unfavored driver's claim as a plaintiff is defeated by his failure to yield the right-of-way, since he is then guilty of contributory negligence as a matter of law." (Citations omitted).

The decisions of the Court in recent years have been at least as firm in applying the boulevard rule as were the earlier cases, although they have recognized that the rule is exacting, and sometimes harsh. The Court in *Creaser v. Owens,* 267 Md. 238, 297 A. 2d 235 (1972)[4] said, at 243-44:

> "* * * the duty of the unfavored driver to yield the right of way extends to traffic on the whole of the

---

4. Reversing the judgment of this Court in Owens v. Creaser, 14 Md. App. 593, 288 A. 2d 394 (1972).

favored road and the driver on the favored highway has a right to assume that he will do so. * * * When the operator of a vehicle enters the favored highway in disregard of these explicit and mandatory rules and collides with another vehicle approaching thereon, the collision must be at least partially attributed to his negligence. * * * It is firmly established in this State that when the 'boulevard rule' is applicable the unfavored driver is negligent as a matter of law when sued or contributorily negligent as a matter of law when suing." (Citations omitted).

In that opinion the Court quoted and reemphasized what it had said much earlier in *Shedlock v. Marshall,* 186 Md. 218, 46 A. 2d 349 (1946), at 235:

"What the statutes * * * mean is that a driver who enters, from an unfavored highway, an intersection with a favored boulevard or arterial highway where there are no traffic controls must yield the right of way to all the traffic he finds there during the entire time he is there. If he does not, and a collision results, he is at fault and cannot recover against the other driver unless the doctrine of last clear chance enters the case. So far as his rights as a plaintiff are concerned, it makes no difference what the other party does in the first instance. He is negligent because he has not yielded the road. Being negligent himself, his action is barred."

Summarizing in *Creaser v. Owens, supra,* the Court said at 245:

"In order to make crystal clear our holding here, we emphasize that if an unfavored driver is involved in an accident with a favored vehicle under circumstances where the boulevard law is applicable then in a suit based on that collision the unfavored driver is deemed to be negligent as a mat-

ter of law. And, if the unfavored driver is a plaintiff, his suit is defeated unless the doctrine of last clear chance rescues his claim."

In *Hensel v. Beckward*, 273 Md. 426, 330 A. 2d 196 (1974),[5] the Court of Appeals called attention to its decision in *Creaser v. Owens, supra,* and said, at 427:

"* * * once again we are faced with a case in which the application of the 'boulevard rule' is sought to be avoided. Like the Rock of Gibraltar we remain firm and will not allow the legislative mandates contained in this right-of-way statute to be judicially either bypassed or otherwise eroded through new waves of attack."

What this Court had groped for unsuccessfully in our decision in *Beckward v. Hensel, supra,* n.5, was not an erosion of or an exception to the boulevard rule, but a recognition of the possibility that the significant facts pointing to the proximate cause of a collision, though it happened when an unfavored driver entered a through highway, *could,* under some circumstances, be such that the boulevard rule simply did not apply.

After *Hensel v. Beckward, supra,* this Court, bowing to the inexorable application of the boulevard rule (in the absence of a genuine issue of last clear chance) to any collision occurring when an unfavored driver entered a through highway, regardless of the conduct of the favored driver, decided *Johnson v. Dortch,* 27 Md. App. 605, 342 A. 2d 326, *cert. denied,* 276 Md. 745 (1975). We affirmed a judgment entered upon a directed verdict for the favored driver in a suit by the unfavored driver. We noted that the evidence was sufficient to permit findings of fact "that the favored driver, Mr. Dortch, was guilty of four separate, serious traffic violations: driving while intoxicated, speeding, operating without headlights (the accident happened at 11:45 P.M., on 24 February 1973), and driving on the wrong side of the street." At 611-12.

---

5. Reversing the judgment of this Court in Beckward v. Hensel, 20 Md. App. 544, 316 A. 2d 309 (1974).

We rejected a contention that last clear chance applied, finding no evidence of sequential, as distinguished from concurring, negligence. Applying the law as the cases stated it to be, we said, at 616:

> "Here, the trial court correctly found the Boulevard Rule applicable and the Boulevard Rule violated by appellant."

Firm as we thought it was, the Rock of Gibraltar has now crumbled into the sea. This disaster, or boon, depending on one's viewpoint, was caused by the delayed-action explosion of a charge planted by the General Assembly in 1970, and detonated by the holding of the Court of Appeals in *Covington v. Gernert*, 280 Md. 322, 373 A. 2d 624 (1977).

If some parts of The Rock remain visible above the surface, they offer little safe haven to the once favored traveler.

The heart of the holding in *Covington* is the meaning it gives to the statutory definition of "right-of-way". Before 1 January 1971, that definition, Code (1957), Art. 66½, § 2 (a) (45), was, "The privilege of the immediate use of the highway." By Acts of 1970, ch. 534, § 1., a general revision of the vehicle laws, the definition was changed. The new definition was not applicable to any traffic accident occurring prior to 1 January 1971.[6] At the time of the accident in *Covington*, as well as in the case presently before this Court, the definition, codified as Art. 66½, § 1-175,[7] was:

> "Right-of-way means the right of one vehicle or pedestrian to proceed in a lawful manner on a highway in preference to another vehicle or pedestrian."

---

6. The traffic accidents which gave rise to Creaser v. Owens, supra, and Hensel v. Beckward, supra, occurred before the change. The accident in Johnson v. Dortch, supra, occurred after the change.

7. The identical definition is codified, effective 1 July 1977, as Code, Transportation Art., § 21-101 (o).

In *Covington* the accident occurred in a through highway intersection. Covington, the unfavored driver, brought suit in the District Court in Baltimore against Gernert, the favored driver. In the District Court, Covington prevailed. The Baltimore City Court reversed on appeal, holding that the boulevard rule protected Gernert. The undisputed evidence showed that although Gernert was operating his vehicle on a "through highway", that highway was a one way street, and Gernert was going the wrong way.

The holding of the Court [8] is expressed in devastatingly concise terms. It said, at 325:

"It is obvious that when Gernert was operating his motor vehicle the wrong way on a one-way street he was not 'proceed[ing] in a lawful manner' and thus his vehicle was not entitled to preference over that of Covington. Accordingly, the Baltimore City Court erred in determining that the boulevard rule required a finding that Covington was guilty of contributory negligence as a matter of law. We need go no further than that."

The Court took note of other evidence that tended to show Covington guilty of contributory negligence. It said, at 325:

"On the remand the Baltimore City Court will be permitted to consider all relevant facts in determining whether Covington may recover from Gernert except that it will not be permitted to regard Covington as having violated the boulevard rule."

The message of *Covington v. Gernert* is clear. The departure from the past arises when the favored driver is not proceeding in a lawful manner. Then the boulevard rule no longer applies, and the favored driver is not entitled to preference over the unfavored driver.

This means that in a case arising from a vehicle collision

---

8. The opinion noted that this was the first case to reach the Court since the change in the statute in which the change appears to compel a different result.

which happens when one driver enters a through highway, if there is evidence sufficient to permit a finding of fact that the favored driver was proceeding in a manner that was *not* lawful, then it is for the jury to determine whether the favored driver has lost his statutory preference. As the Court of Appeals said in Covington, "[the trial court] will not be permitted to regard [the entering driver] as having violated the boulevard rule."

At the risk of justifiable criticism for indulging in the vice of self-quotation, this writer repeats what he said in a concurring opinion in this Court's *Beckward v. Hensel*, 20 Md. App. at 560, 316 A. 2d at 318:

"When the boulevard rule is applicable, it is virtually absolute, but, accepting the efficacy of that view, we still may not hold it applicable to every collision that happens in the intersection of a favored and an unfavored highway. The key is proximate cause. If the harm was proximately caused by breach of the duty imposed by the boulevard rule, then the rule must be strictly applied. But if the proximate cause was the breach, by either party, of some other duty, then the boulevard rule is not applicable."

What *Covington v. Gernert, supra,* does, and what we think justice demands, is to permit our judicial system, in the search for proximate cause — the underlying fault which caused the harm — to look behind doors hitherto barred.

Appellants also attempt to proceed to trial on either or both of the only two chinks heretofore judicially seen in the armor of the boulevard rule. To avoid the rule, they argue that Steven had completed his turn and had "entered the flow of traffic". To evade the rule, they argue that the truck driver had the last clear chance to prevent the accident.

The "flow of traffic" rule, suggested by the holdings in *Ness v. Males,* 201 Md. 235, 93 A. 2d 541 (1953) and *McCann v. Crum,* 231 Md. 65, 188 A. 2d 537 (1963), was stated

explicitly in *Grue v. Collins,* 237 Md. 150, 205 A. 2d 260 (1964), where the Court said, at 157:

> "Rigorous as are the duties imposed upon the unfavored driver in entering the public highway for the protection of the public and for the smooth flow of traffic, he is not a perpetual pariah; if he has observed the mandates of the law in entering the intersection and has become a part of the flow of traffic on the favored highway, he has the same rights and is subject to the same duties as the other drivers on that highway."

The rule has been discussed and applied by us in *Kowalewski v. Carter,* 11 Md. App. 182, 273 A. 2d 212 (1971); *Paul v. Lyons,* 34 Md. App. 93, 366 A. 2d 410 (1976), and *Great Coastal Express v. Schruefer,* 34 Md. App. 706, 369 A. 2d 118 (1977). To suggest that the rule could be applied to the facts of this case, when the accident involves vehicles going in opposite directions, approaches the ridiculous. It is quite impossible for a southbound vehicle to enter the flow of northbound traffic.

As to last clear chance, there simply were no facts whatever before the court which would have permitted consideration of that rule of law.

Based upon the law as we now understand it to be, the facts presented to the court raised genuine and material issues which required a trial. It was error to grant judgment summarily.

> *Judgment reversed.*
> *Case remanded for further proceedings.*
> *Appellees to pay costs.*