CHRISTOPHER ROY HANSEN *v.* RUTH KAPLAN
ET AL.

[No. 1639, September Term, 1979.]

*Decided October 20, 1980.*

The cause was argued before MOYLAN, J., and RICHARD M.
POLLITT, Associate Judge of the First Judicial Circuit and M.
ALBERT FIGINSKI, Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Edward B. Layne, Jr.,* for appellant.

*Thomas H. Talbott,* with whom were *Brault, Graham, Scott & Brault* on the brief, for appellee Connolly. *Korn & Rosenstein* on the brief for appellees Kaplan.

FIGINSKI, J., delivered the opinion of the Court.

Appellees, plaintiffs below, instituted suit in the Circuit Court for Montgomery County, on December 2, 1977 seeking damages for personal injuries to Ruth Kaplan, and to the marital relationship of Ruth and Lawrence Kaplan. The suit was based on an automobile collision which occurred on May 4, 1977. On that date, Ruth Kaplan, after completing work as a special education teacher, went to a gym, Slender Lady, on East Diamond Avenue in Gaithersburg, Maryland. Recreation completed, she departed for home, travelling east on East Diamond Avenue. As she approached the intersection of East Diamond Avenue and Park Avenue in Gaithersburg, her journey was brought to an abrupt, injurious end, when a vehicle being driven westerly on East Diamond Avenue by defendant Hansen spun or ricocheted into her vehicle after striking a vehicle being driven by defendant Connolly. The impact between the Hansen and Connolly vehicles occurred at the intersection of Park Avenue and East Diamond Avenue. A stop sign regulated that intersection, making East Diamond Avenue the favored roadway, i.e., the boulevard, and Park Avenue the unfavored street, i.e., the stop-street.

The issues of liability and damages were bifurcated by order of the trial court on motion of defendant Connolly. At trial on the issue of liability, the case was submitted to the jury to determine the fault of both Hansen and Connolly. The evidence produced at trial made absolutely clear that appellees were faultless. The jury's verdict was in favor of defendant Connolly against appellees and in favor of appellees against defendant Hansen. A motion for judgment N.O.V. or a new trial by Hansen was denied. After final judgment on stipulated damages was entered, Hansen alone appealed.[1] Appellant does not challenge the trial judge's

1. This case, prematurely, came to this Court in October, 1979. After the trial of the issue of liability and entry of a verdict in favor of defendant

34

instructions to the jury nor does he point to any error in the conduct of the trial. Rather, appellant's argument, relying upon an analysis of the so-called boulevard rule, challenges the finding of liability, as to him, as contrary to law. Appellant contends that the trial court erred in failing to grant his motion for a directed verdict because, by the boulevard rule, the sole proximate cause of the accident here was defendant Connolly's intrusion into the boulevard. Appellant misperceives the reach and applicability of the boulevard rule. Moreover, even if that rule were applicable, appellant would not, on the facts of this case, have been entitled to a directed verdict as a matter of law.

A review of the critical facts established at trial is necessary for a proper analysis of the argument presented. Our review must consider the evidence and all logical and reasonable inferences deducible therefrom in the light most favorable to the appellee. *Schwier v. Gray,* 277 Md. 631, 636 (1976).

The collision occurred at approximately 7 p.m. on May 4, 1977. It had been drizzling and the roads were wet. The twilight was cloudy. Ruth Kaplan, proceeding east on East Diamond Avenue, was, as all concede and the jury was instructed, free from any negligence. As she approached the intersection of East Diamond and Park Avenues, she saw the Connolly vehicle pull slightly into the intersection,

Connolly and a verdict against defendant Hansen, as well as a judgment in favor of plaintiffs against Hansen for liability, Hansen appealed, even though there had been no determination or judgment as to damages. Because there was no finding by the trial court as required by Rule 605a, as well as because the appeal line was entered more than 30 days after the entry of the judgment as to liability, this Court dismissed the appeal sua sponte on November 8, 1979. Absent a determination by the trial court as required by Rule 605a, an appeal from a determination of liability in a bifurcated negligence case is not timely until a judgment as to damages has been entered. *Greyhound Lines v. Alderson,* 23 Md. App. 224, 226-231 (1974); *Knight v. Tolson,* 10 Md. App. 311, 313-4 (1970). See also, *Balto. Contractors v. Valley Mall,* 27 Md. App. 695, 700 (1975); *Harford Sands, Inc. v. Levitt & Sons,* 27 Md. App. 702, 712 (1975); *J. C. Penny Co. v. Harker,* 23 Md. App. 121, 126 (1974). On November 30, 1979, a final judgment in the amount of $20,000.00 was entered in favor of plaintiffs against defendant Hansen, predicated upon a stipulation dated prior to trial by counsel for all parties. On December 26, 1979, defendant Hansen appealed from that judgment. That timely appeal is now before the Court. There was no appeal from the judgment in favor of defendant Connolly.

apparently to make a left hand turn.[2] As she observed the Connolly vehicle, Mrs. Kaplan also saw the Hansen vehicle, proceeding westbound on East Diamond Avenue. Fearing that Hansen would be unable to get around Connolly without intruding into her lane, Mrs. Kaplan pulled over to the right as far as possible, short of the intersection, to give Hansen the ability to intrude her lane and avoid Connolly. Indeed, Mrs. Kaplan testified that she had brought her car to a stop "twenty to thirty feet from the corner" of the intersection of East Diamond and Park Avenues. Hansen, travelling faster than the flow of traffic, applied his brakes, causing his vehicle to wiggle, slide and fishtail. Hansen impacted the Connolly vehicle [3] and slid into Mrs. Kaplan's car. An eyewitness, Mr. Hayes, who was travelling behind the Hansen vehicle after being passed by it "on the right at an unreasonable speed", testified that a car proceeding westerly on East Diamond Avenue, as was his vehicle and the Hansen vehicle, could have continued "straight on" in the travel lane [4] of East Diamond Avenue "without coming into contact with" the Connolly vehicle. Another eyewitness, Mr. Iverson, testified that the Hansen vehicle, just prior to the accident, "seemed to be going at a speed higher than the normal traffic." His attention, he testified, was drawn to the Hansen vehicle "because of the wheels on the wet pavement and the engine noise and exhaust seemed to be louder than normal." Several witnesses placed the speed of the Hansen vehicle at thirty-five miles per hour. The speed limit was not precisely established, the testimony being that it was either twenty-five or thirty miles per hour.

In *Dean v. Redmiles,* 280 Md. 137, 143-159 (1977), the Court of Appeals, per Judge Smith, reviewed its "prior

---

**2.** Park Avenue does not cross East Diamond Avenue. A vehicle on Park Avenue could only proceed by turning left or right onto East Diamond Avenue.

**3.** Defendant's Exhibit 8 is a photograph of the Connolly vehicle depicting very slight damage to the foremost tip of that vehicle's hood. The damage, to the eye, appears negligible.

**4.** There are two westbound lanes on East Diamond Avenue as it approaches Park Avenue. The curb lane may be used for parking and was so used at the time of this occurrence. The westbound travel lane abuts the eastbound lane and is only divided by a double painted line.

holdings relative to the boulevard law," *id.,* 143, and found that "cases reaching [the Court of Appeals] arising under the boulevard rule fall into eight categories," *id.,* 144:

> "The suit of the favored driver against the unfavored driver, the unfavored driver against the favored driver, the passenger of an unfavored driver against both drivers, the passenger of the favored driver against both drivers, the passenger of the favored driver against the unfavored driver, the passenger of the favored driver against the favored driver, and, finally, counterclaims so that the favored drivers are suing each other."

After classifying and discussing the cases which fit these categories, the Court observed, *id.,* 147:

> "We have attempted in our citation of various types of suits arising under the boulevard rule to include most, if not all, of the cases reaching this Court. It will be seen that the vast preponderance of this litigation has concerned suits between favored and unfavored drivers. Accordingly, *much of what has been said with reference to the boulevard rule must be placed in that context."* [Emphasis added.]

The case reaching this Court in this appeal fits into *none* [5] of the eight categories noted in *Dean v. Redmiles.* Here, Ruth Kaplan was driving on the boulevard, or favored street, just as was the appellant. In addition, the Kaplan vehicle was not in the intersection at the time it was struck; instead, it was thirty feet from the intersection. In some boulevard rule decisions, e.g., *McDonald v. Wolfe,* 226 Md. 198, 203 (1961); *Simco Sales v. Schweigman,* 237 Md. 180, 186 (1964), it has been said that a collision outside the intersection does not bar applicability of the boulevard rule, if the collision is caused by the rule's violation. Each such case, however,

---

5. By analogy, appellees may be in parity with the passenger of the favored driver. For a dicussion using this analysis, see p. 12, infra.

involved litigation between a favored and unfavored driver, not, as here, litigation between two drivers on the boulevard. Well before *Dean v. Redmiles, supra,* the Court of Appeals had placed outside the reach of the boulevard rule a vehicle which had entered the favored road, after clearing the intersection and ceasing to interfere with the flow of favored traffic through the intersection. See, *McCann v. Crum,* 231 Md. 65, 68 (1963); *Shaneybrook v. Blizzard,* 209 Md. 304, 312-3 (1956); *Ness v. Males,* 201 Md. 235, 239-40 (1953). In effect, these cases refused to apply the boulevard rule to vehicles which had become a part of the favored traffic flow. In *Dean v. Redmiles, supra,* 149, the Court of Appeals quoted from *McCann* and reiterated the exception to application of the boulevard rule. Likewise, in placing pedestrians, *Folck v. Anthony,* 228 Md. 73 (1962), and exiting vehicles, *Palmer v. Scheid,* 223 Md. 613, 616-7 (1960); *Safeway Trials, Inc. v. Smith,* 222 Md. 206, 212 (1960), beyond the reach of the boulevard rule, the Court of Appeals demonstrated judicial reluctance to apply the so-called rule outside the confines delineated by the clear words of the statute.

Constraint, not expansion, of the boulevard rule is the clear lesson of the authorities reviewed above. If there was ever any question with respect to that lesson, it surely was laid to rest by *Covington v. Gernert,* 280 Md. 322 (1977) and *Gazvoda v. McCaslin,* 36 Md. App. 604 (1977).

In *Covington,* a driver travelling the wrong way on a one-way favored street was denied the immunity of the boulevard rule. The Court of Appeals noted that the rule requires a driver approaching a stop sign to come to a full stop and "yield the right of way" to vehicles travelling on the favored street. A 1971 statutory redefinition of right of way was discovered and interpreted to grant preference only to vehicles proceeding in a lawful manner on the favored highway. The Court of Appeals, therefore, concluded that, because a driver travelling the wrong way on a one way thoroughfare was not proceeding in a lawful manner, such driver "was not entitled to preference over" the unfavored driver. 280 Md. at 325.

In *Gazvoda,* this Court scrutinized *Covington's* impact on

the boulevard rule. There, Judge Powers, for this Court, wrote, 36 Md. App. at 612-3:

> "The message of *Covington v. Gernert* is clear. The departure from the past arises when the favored driver is not proceeding in a lawful manner. Then the boulevard rule no longer applies, and the favored driver is not entitled to preference over the unfavored driver.

> This means that in a case arising from a vehicle collision which happens when one driver enters a through highway, if there is evidence sufficient to permit a finding of fact that the favored driver was proceeding in a manner that was *not* lawful, then it is for the jury to determine whether the favored driver has lost his statutory preference. As the Court of Appeals said in Covington, '[the trial court] will not be permitted to regard [the entering driver] as having violated the boulevard rule.'

> At the risk of justifiable criticism for indulging in the vice of self-quotation, this writer repeats what he said in a concurring opinion in this Court's *Beckward v. Hensel,* 20 Md. App. at 560, 316 A.2d at 318:

>> 'When the boulevard rule is applicable, it is virtually absolute, but, accepting the efficacy of that view, we still may not hold it applicable to every collision that happens in the intersection of a favored and an unfavored highway. The key is proximate cause. If the harm was proximately caused by breach of the duty imposed by the boulevard rule, then the rule must be strictly applied. But if the proximate cause was the breach by either party, of some other duty, then the boulevard rule is *not* applicable.'

> What *Covington v. Gernert, supra,* does, and what we think justice demands, is to permit our

judicial system, in the search for proximate cause —
the underlying fault which caused the harm — to
look behind doors hitherto barred."

Both *Covington* and *Gazvoda* involved suits between only
a favored driver and an unfavored driver. Neither involved
litigation, as here, between two drivers on a favored
highway. The parties have cited no case barring a search,
from the facts, for the proximate cause of an accident in a
case such as presented here. Our own research has
uncovered no such case. Some instruction can be gleaned
from *Dail v. Tri-City Trucking Co.,* 39 Md. App. 430 (1978)
where we looked carefully at the facts of the case [6] and
refused to apply the boulevard rule to a situation outside the
eight pigeonholes of *Dean v. Redmiles.* We wrote, in *Dail:*

> "The boulevard rule's purpose of facilitating the
> flow of traffic is fully effectuated if uninterrupted
> travel is encouraged by protecting the favored
> driver's right of way and recklessness is
> discouraged by penalizing the unfavored driver for
> failure to yield the right of way. The favored driver
> is protected by 'virtual immunity against actions
> brought by the unfavored driver.' The unfavored
> driver is penalized by being found contributorily
> negligent as a matter of law.
>
> The rule's purpose would not be significantly
> advanced by barring an unfavored driver from
> recovery against a negligent party other than the
> favored driver. Indeed, it would be antithetical to
> the rule's purpose to immunize such a negligent
> party from liability when that party's actions
> caused the disruption of the flow of traffic on a

---

6. In *Dail,* the plaintiff came upon a construction effort on a through dual
highway. The contractor had not set up, however, any signs noting that two
westbound lanes of traffic on the favored highway had been closed and
traffic re-routed to one of the normal eastbound lanes. Plaintiff stopped at
the westbound lanes, came to the median and stopped again. Plaintiff,
however, looked, then, for only eastbound traffic. As he entered the
intersection, a westbound truck collided with him. The truck driver was
immunized, by the boulevard law, but claim against the contractor, for
failure to post, was left to the jury.

through highway by causing the unfavored driver's failure to yield the right of way. In addition, it would be unfair to immunize that negligent party under such circumstances by applying the boulevard rule.

We decline to apply the boulevard rule here because it would not serve that rule's purpose and would be unfair." 39 Md. App. at 435-6.

By like reasoning, in this case the boulevard rule's purpose would not be advanced by immunizing Hansen against suit by another driver on the favored roadway. In the words of *Dail,* it would "not serve that rule's purpose and would be unfair" to leave the clearly non-negligent favored driver without recourse against another favored driver's negligence. In this case, there is no dispute that Ruth Kaplan was without fault. From the facts, Hansen, the other driver on the boulevard, was proceeding too fast for conditions, did not have proper control of his vehicle and was inattentive. Parenthetically, it may be noted that a broad reading of *Covington v. Gernert, supra,* and *Gazvoda v. McCaslin, supra,* would not bar a suit by Connolly against Hansen. Indeed, from the jury's verdict exonerating Connolly, it might well be inferred that Hansen's erratic driving caused the entire episode and that the jury believed witness Hayes' testimony that a straight course westward was achievable because Connolly had not intruded the travel lane.

Appellant gives no weight to Hayes' testimony.[7] Instead, appellant urges that the "case is determined by Maryland's Boulevard Law" because the injuries to Mrs. Kaplan came "as a direct result of a collision between two motor vehicles which were in a Boulevard Law situation."[8] Therefore,

---

7. We cannot be so inclined for our job is to view the facts in the light most favorable to appellee and to credit reasonable inferences therefrom. See page 34, supra.

8. Appellant candidly notes "one caveat which occurred when the Appellant's vehicle spun around out of control and collided with the Appellee on the opposite side of the street after having impacted with the

Appellant urges that "the strict rules of the Boulevard Law
... be enforced" against appellees, who were "third parties"
to a boulevard impact. At bottom, Appellant relies, see
Appellant's Brief, p. 5, on a quote from *Tippett v. Quade,* 19
Md. App. 49 (1973), where former Judge Scanlan wrote:

> "[A]ppellee represents a third party, the deceased
> passenger, and not one of the two drivers involved
> in the accident. That makes no difference. The
> principles which surround application of the 'boule-
> vard rule' are the same in such a case as those to
> which the court would look if the suit were one
> involving a favored driver and an unfavored driver
> alone." 19 Md. App. at 59.

We questioned the breadth of this statement in *Victor A.
Pyles Co. v. Rehman,* 21 Md. App. 686, 690, n. 5 (1974),
noting that in both cases cited to support it,[9] "the Court of
Appeals permitted both the favored and unfavored vehicles'
negligence to be determined by the jury." If the *Tippett*
statement had persisting merit, it was surely undermined by
*Dean v. Redmiles, supra.* Indeed, we relied, in part, upon the
quote from *Tippett* to reach, in *Redmiles v. Muller,* 29 Md.
App. 304, 313 (1975), the result overturned in *Dean v.
Redmiles.*

Even if the boulevard rule were applicable to the case on
appeal, appellees, in the position of a non-negligent second
favored vehicle, could certainly not be considered in any
lesser light than a non-negligent passenger of the favored
driver. And, it is clear from *Dean v. Redmiles,* that in a suit

---

unfavored vehicle operated by Connolly." Appellant's Brief, p. 5. Little
testimony at trial was directed to what caused this spinning action. The
impact between the Hansen and Connolly vehicles appears, from
photographs, see footnote 3, supra, to have been slight and it seems clearly
reasonably inferrable that the Hansen vehicle spun because of its speed and
its driver's fault. Indeed, but for the spinning, there would have been no
injury to Appellants. Cf., Figinski, Foreseeable Intervening Negligence Not
a Superceding Cause, 21 Md.L.Rev. 68; *Folk v. Bossler,* 256 Md. 232, 237
(1969).

**9.** *Harper v. Higgs,* 225 Md. 24 (1961); *Shedlock v. Marshall,* 186 Md. 218
(1946).

by a passenger, a favored driver cannot escape liability if his actions are "*a* proximate cause" of the injury. 280 Md. at 151-2. Here, appellant's speed, inattention and failure to control his vehicle were at least *a* cause of appellees' injuries.[10] The Court of Appeals discussion of suits by passengers is illuminating particularly when the reader reads, for the purposes of this case on appeal, "a second favored vehicle" in place of passenger. Judge Smith wrote:

> "The favored driver was sued by his passenger in *Yellow Cab Co. v. Bonds,* 245 Md. 86, 225 A.2d 41 (1966); *White v. Yellow Cab Company,* 216 Md. 286, 140 A.2d 285 (1957); and *Sun Cab Co., Inc. v. Hall,* 199 Md. 461, 86 A.2d 914 (1952). The passenger prevailed in all of those cases other than *White.*
>
> In no case, with the possible exception of *Sun Cab Company, Inc. v. Cusick, supra,* has the boulevard law been held to bar recovery from a favored driver in a suit brought by his passenger. Even there, as we have pointed out, this can hardly be said to be a clear-cut holding that the boulevard law insulates the favored driver from liability to his passenger for his negligence." 280 Md. at 146-7.

\* \* \*

> "In a case involving the claim of the passenger of an unfavored driver against the favored driver or the claim of a passenger of a favored driver against the favored driver, the fact that the favored driver is violating the speed law does not become a jury question unless the evidence is sufficient to warrant a conclusion that the violation is *a proximate cause of the injury* concerning which complaint is made." 280 Md. at 151-2. Emphasis added.

\* \* \*

10. It has long been held that there may be more than a single proximate cause of a vehicle accident. See, e.g. *Brawner v. Hooper,* 151 Md. 579, 584 (1926).

Appellant may well be disturbed that defendant Connolly was exonerated, but there is no appeal from the judgment in his favor just as the docket below reflects no cross-claim by appellant against him.

"The first of the cases we have cited in which a passenger of a favored driver was permitted to recover from the favored driver is *Sun Cab Co., Inc. v. Hall, supra,* 199 Md. 461, There the passenger recovered a judgment which was affirmed by this Court on appeal." 280 Md. at 153.

\* \* \*

"The second such case was *Yellow Cab Co. v. Bonds, supra,* 245 Md. 86. There a taxicab collided with a vehicle in front of it on a boulevard. That vehicle had been braked suddenly to avoid collision with another car which had failed to stop or yield the right-of-way at an intersection with that boulevard. Suit was by a passenger in the cab. As Judge Horney put it for the Court, '[T]he question on appeal [was] whether the cabdriver was guilty of negligence which was also a proximate cause of the accident.' In holding that he was, the Court said:

'That there can be more than one proximate cause of an accident is clearly established. While the negligence of the cabdriver must have been *a proximate cause* in order to warrant recovery by the passenger, it did not necessarily have to be the sole proximate cause of the accident. The negligence of the operator of the intruding automobile did not excuse the cab owner and driver from liability for damages. It was enough that the negligence of the cabdriver, in concurrence with that of the other motorist, proximately caused or contributed to the injuries the passenger sustained. *Yellow Cab Co. v. Hicks,* 224 Md. 563, 168 A.2d 501 (1961); *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 196 Atl. 111 (1938); *Brawner v. Hooper,* 151 Md. 579, 135 Atl. 420 (1926). Other cases are collected in 3 M.L.E., *Automobiles,* § 162.

44

'The argument of the appellants is that the boulevard law relieved them from liability because the operator of the cab was the favored driver, but this fact did not relieve the cabdriver of the obligation to use due care under the circumstances of this case. *Harper v. Higgs,* 225 Md. 24, 169 A.2d 661 (1961); *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 49 A.2d 537 (1946). Nor did the fact that a concurrent tort-feasor violated the boulevard law affect the claim of the appellee against the appellants.' " 280 Md. at 155-6.

\* \* \*

"Although the defendant favored driver in each of those cases was a taxi operator and it might be argued that his contract for safe carriage of his passenger placed upon him a higher duty of care than an ordinary driver, the Court appeared in no way to rest its decision on that fact. No common carrier was involved, however, in *Kopitzki v. Boyd, supra,* 277 Md. 491, . . . ." 280 Md. at 157.

\* \* \*

"In *Kopitzki* it was pointed out that the other driver on the favored highway, 'who admitted that he too was exceeding the speed limit at the time, was able to avoid striking (the entering vehicle), without jamming on his brakes.' The Court concluded that '[t]he jury could have found that it was Kopitzki's inattention that was a proximate cause of the accident. This was negligent conduct which would support [the passenger's] claim against Kopitzki, and [she] was entitled to have the jury consider it,' citing *Brown v. Ellis, supra,* 236 Md. at 495." 280 Md. at 158-9.

Appellant who, according to the evidence and inferences therefrom in the light most favorable to appellees, was travelling too fast for conditions, did not have proper control of his vehicle and, according to the testimony of Mr. Hayes, could have continued in his lane without striking defendant Connolly, should not have had, as a matter of law, his actions withdrawn from the jury's consideration by a directed verdict in his favor.

*Judgment affirmed.*
*Cost to be paid by appellant.*