RUTH WHITE RICHARDS *v.*
JAMES STEPHEN GOFF,
MINOR, ETC., ET AL.

[No. 481, September Term, 1974.]

*Decided May 28, 1975.*

The cause was argued before MOYLAN, POWERS, GILBERT and MASON, JJ.

*Nat W. Hopper*, with whom were *Serio, Hopper & Carmody* on the brief, for appellant.

*Arthur V. Butler*, with whom were *Lawrence F. Weslock* and *Cheryl Lynn Hepfer* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

The facts in this case are uncomplicated, and the significant facts are uncontroverted. The law which must be applied to those facts requires that we reverse the judgments entered in favor of the plaintiffs below.

Suit was filed in the Circuit Court for Anne Arundel County by James Stephen Goff, a minor, and Harry S. Goff, his father, against Ruth White Richards. The declaration contained two counts for damages arising out of an automobile-bicycle accident. The first count was for injuries sustained by the minor, and the second count sought to recover the medical expenses incurred by his father.

After removal of the case to the Circuit Court for Baltimore County,[1] a jury trial was held in that court on 28 and 29 March and 1 April 1974. At the close of the evidence a motion by the defendant for a directed verdict in her favor was denied. The jury found in favor of the minor plaintiff and his father. From the judgments entered on those

---

1. In due course after suit was filed, a trial was commenced before a jury in the Circuit Court for Anne Arundel County, but came to an abrupt end at the conclusion of the plaintiffs' opening statement. Defendant there moved for a directed verdict on the basis of the opening statement, and the motion was granted. We reversed the judgment entered on that verdict, holding that there is no Maryland procedure which permits a directed verdict at that stage of trial. Goff v. Richards, 19 Md. App. 250, 310 A. 2d 203 (1973). While the case was before this Court on appeal, the Goffs filed an affidavit and suggestion for removal. Our remand directed that the case be sent to the Circuit Court for Baltimore County for trial.

verdicts after denial of a motion for judgment n.o.v. or for a new trial, Mrs. Richards appealed. She contends in her appeal that the trial court erred in denying her motion for a directed verdict at the close of all the evidence, and that the court erred in its instructions to the jury in eleven different respects. Since we conclude that the motion for a directed verdict should have been granted, it is unnecessary to consider the instructions.

The evidence showed that all parties lived on Crandall Road, in Anne Arundel County. Crandall Road was a paved county road, 22 feet wide, with no land or center line markings. Shoulders of loose stone and gravel were about four feet wide. The road was about 3/4 of a mile long, running north and south. At the south end, it intersected Route 258, and from there, going north, it came to a dead end.

Mrs. Richards lived in the last house at the north end of Crandall Road. The Goffs lived about 600 to 700 feet to the south, and a family named Schruhl lived about 500 feet south of the Goffs. At this point Crandall Road was straight, and slightly downhill to the south. The posted speed limit was 30 miles per hour.

In the afternoon of 12 May 1972 James had been visiting at the home of his friend Chuckie Schruhl. At about 3:45 P.M. James left the Schruhl's yard, riding his bicycle. The day was clear and bright. He rode down the driveway, which sloped downhill, between high banks, to intersect with the east side of, and enter Crandall Road. James rode out onto Crandall Road. At the same time Mrs. Richards, with her sister-in-law as a passenger, was driving an automobile south on Crandall Road. The bicycle and the automobile collided, and James was severely injured.

Trooper Ralph C. Lewis, Jr., of the Maryland State Police, called by the plaintiffs as a witness, said that he answered the call and arrived at the scene. The report of the accident was made by Trooper James H. Mollman, who arrived a few minutes later. Both took part in the investigation. Trooper Lewis said, "When you are going south on Crandall Road, you come to the private drive. You cannot see up the

driveway up to your left if you are driving your car going straight ahead. You have to be almost to the driveway to see up the driveway." He testified that his diagram showed the distance to be 22 feet, that you could see something coming out of the driveway.

Mr. Goff testified that he "did some measurements yesterday, experimented with them". Asked how far back he could observe the Schruhl driveway when he was heading south, he responded, "I'd say between sixty and seventy feet." As to how far up the driveway he could see from that point he answered, "I'd say, approximately fifteen feet".

Both police officers said that there was nothing to indicate the point of impact on the roadway, such as dirt, glass, paint, or other debris. Parts of the broken bicycle were on the shoulder on the right side looking south. James was lying on that shoulder.

Trooper Lewis testified to a statement made to him by Mrs. Richards at the Schruhl home a few minutes after the accident. He read a series of questions asked of Mrs. Richards, and her answers that he recorded at that time. She had told the Trooper that she was driving south on Crandall Road from her home to take her sister-in-law home. There were no other automobiles on the road. He read further from his report:

"Question: How far was this person or vehicle away when you first observed him?

Answer: Right in front. Darted out from between banks.

Question: What was the condition of your brakes, foot or emergency, at the time of the accident?

Answer: Good.

Question: How fast were you driving at the time of this accident?

Answer: Twenty-five to thirty miles per hour.

Question: With reference to this accident, how far did your vehicle travel after the accident before coming to a complete stop?

348

Answer: Fifty or sixty yards.

Question: What was the condition of the street, dry, bumpy, et cetera?

Answer: Dry. Bank of dirt.

Question: Describe the lighting conditions at point where accident occurred, daylight or dark?

Answer: Daylight. It was bright.

Question: How was the visibility? How far could you see ahead, right or left?

Answer: Clear visibility front. Clear to right. Bank to the left.

Question: Were the lights on your vehicle lighted?

Answer: No.

Question: Have you anything else to say for — I can't quite read all this, but it pertains to have you everything else to say as to what happened?

Answer: The child darted from between the banks in front of the car. I swerved to the right to try to avoid hitting the child. Went over a bank into a field. So nervous, I realized I had my foot on the gas pedal, and then came to a stop in the field."

Also put in evidence by the plaintiffs were excerpts from a deposition of Mrs. Richards taken before trial. This evidence included the following questions and answers:

"Question: Now, as you came along on Crandall road going to state route 258, where was your vehicle located when you first observed the Goff boy?

Answer: I was on the right side of the road, and I was, approximately, I would estimate, about twenty-five feet from the Schruhl driveway.

Question: What was your rate of travel at that time?

Answer: I estimate between twenty-five and thirty.

Question: When you first observed the Goff boy, where was he located?

Answer: He was coming out of the Schruhl driveway on his bicycle, and he came out on an angle over to my side of the road. He was meeting me headon.

Question: You say his bicycle was meeting you headon?

Answer: Right.

Question: When you first saw him, you were about twenty-five feet away traveling about twenty-five or thirty miles per hour?

Answer: Right.

Question: When you saw him, did you hit your brakes at that time?

Answer: First I swerved over to the right to try to avoid hitting him, and attempted to apply my brakes."

\* \* \*

"Question: Were you at any time on the shoulder prior to the collision?

Answer: No.

Question: You say when you first saw him —

Answer: When I first saw the boy, I got off. I swerved over to my right. There was, approximately, I would say, about twenty-five feet. I had gotten over on the shoulder.

Question: You had gone twenty-five feet over to your right?

Answer: No, not twenty-five feet. I was twenty-five feet from the little boy."

\* \* \*

"Question: Now, Mrs. Richards, after you first

observed the Goff boy on the bicycle, was he in the Schruhl driveway or was he on Crandall Road, to your knowledge?

Answer: Well, he came out so fast, he didn't have much time to be in the Schruhl driveway. He came immediately out onto Crandall Road.

Question: As he came out onto Crandall Road, was he turning to go towards his home or towards your home?

Answer: Right."

* * *

"Question: Can you tell me, based on your experience in going up and down Crandall Road, how close do you have to be to the Schruhl driveway before you see up to it going towards Route 258?

Answer: I, really, don't know. Going towards 258?

Question: Yes, ma'am.

Answer: I, really, don't know how close you would have to be.

Question: When you were, approximately, twenty-five feet back from the Schruhl driveway going towards Route 258, could you see up the Schruhl driveway?

Answer: No.

Question: So that prior to the time that you were seeing the Goff boy, because of the bank, you couldn't see him if he was coming down the driveway?

Answer: Correct.

Question: The driveway leading from the Schruhl house, that was a downhill grade, wasn't it?

Answer: That's correct, a blacktop road."

Mrs. Richards testified at the trial as a witness in her own behalf. She said that she was driving south on Crandall Road, in the right lane. She said she saw the boy on the

bicycle coming out of the Schruhl driveway. He was not on the road when she first saw him. She said she swerved to the right and attempted to put on the brake. He came out at an angle and then right up the road, meeting her head on. She went off the road to the right.

Mrs. Myrtle Catterton, sister-in-law of Mrs. Richards, and her passenger at the time of the accident, testified that Mrs. Richards was driving on the right side of the road, at about 25 miles per hour. When the car was one or one and one-half lengths from the driveway the witness saw James come out of the driveway, right in front of the car. She said that Mrs. Richards swerved to the right to try to avoid hitting him, and went down an embankment and out into the field. Mrs. Richards went to call for help and Mrs. Catterton stayed with the boy until help arrived. Mrs. Catterton said that when the bicycle came out of the driveway, it was coming over at an angle across the road up towards Mrs. Richards' car. She said that at the time of the collision the bicycle was over to the right of Crandall Road, referring to the right side going south.

James testified that he had been visiting his friend Chuckie Schruhl, and left on his bicycle by the driveway. He did not remember the accident. He said that he had had bicycles since he was four years old. He was seven years and eight months old at the time of the accident. At the time of the trial, almost two years after the accident, Mr. Goff said that James had had bicycles for about five years. He said, "I told him to be very careful on the road, watch out for the cars". Both he and his wife had given their son instructions to be careful when riding the bicycle, and about looking for automobiles before going out to Crandall Road.

Reliance is placed by the appellees upon physical evidence observed at the scene of the accident by Trooper Mollman, and testified to by him. The Trooper observed a tire mark, which he said was not a skid mark, on the surface of Crandall Road. It lead up to the back of the vehicle. He said, "Facing in a southerly direction, using the right wheel of the vehicle, the right tire mark, would be six feet from the right side of the roadway facing southbound." The mark

continued 24 feet on the hard surface, 24 feet down an embankment to the right, and 246 feet in a straight line out into the field. The vehicle was then 85 feet to the right of the road. The Trooper's diagram of the scene, a plaintiffs' exhibit, showed that the tire mark was 24 feet to the point where it left the pavement, directly across from the north edge of the driveway.

Trooper Mollman said that he observed damage to the left front headlight of the vehicle, and that there was a dent on the top of the left front fender. He said that the bicycle was broken. He said it was a two wheeler, and supposed the wheels were about 15 inches. The bike was four feet, maybe four and a half feet long. The brake was on the rear wheel. It was admitted in the case that the automobile of Mrs. Richards was 207 inches long, bumber to bumper, and that it was 74 inches wide.

The other mark observed and described by the Trooper was much narrower, and he believed it was made by a bicycle. The mark began in the driveway, was 12 feet long, and extended to a point nine feet into the highway. Where the mark began it was three feet south of the north edge of the driveway pavement. The trial judge asked about the 12 foot mark. The witness said:

> " * * * the tire mark runs in the same direction as the driveway does. It curves to the north and then straight back in the same direction as the driveway, the Schruhl driveway. It runs perpendicular to the road, generally."

Trooper Mollman, indicating on a diagram, said further:

> "Well, it made kind of an S, using the direction. It came out like that. This portion here was on a loose sand surface, and then it became black as it got onto the hard surface of the roadway and continued in a straight line."

He later explained the mark in these words:

> "As it was exiting from the driveway, it came out in a westerly direction, curved towards the north,

came back to the west again, and made kind of an S shape."

Further questions and answers made it clear that the Trooper was saying that the line started going west, then curved to the north, then back to the west. He said that in doing so, it extended nine feet west into the road and nine feet north up the road.

The basic uncontroverted facts are that James Goff, on a bicycle, entered Crandall Road, a public highway, from a private driveway, and was hit by an automobile operated by Mrs. Richards on the public highway. As to those facts, reasonable minds could not differ.

One inference which may appear to be favorable to the appellees may be drawn from the evidence. It is that at the time its rear wheels were 24 feet from the north side of the driveway, the left rear corner of the Richards car was one foot to the left, or east, of the imaginary center line of Crandall Road. Another inference, which presents no alternative, is that when the braking action of the bicycle stopped, a substantial part of the front of the bicycle was west of that imaginary center line.

We draw the inference favorable to the appellees, but with or without it the applicable law is clear. Code, Art. $66^{1}/_{2}$, § 11-404 (now subsection (a)) required that

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall stop and yield the right-of-way to all vehicles approaching on the highway."

This section applies the "boulevard law" of § 11-403 to private entrances without requiring the erection of stop signs. *Grue v. Collins*, 237 Md. 150, 205 A. 2d 260 (1964); *Shriner v. Mullhausen*, 210 Md. 104, 122 A. 2d 570 (1956); *Craig v. Englar*, 11 Md. App. 146, 273 A. 2d 224 (1971).

Code, Art. $66^{1}/_{2}$, § 1-209 defines a "vehicle". It says:

"Vehicle means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway."

Code, Art. 66¹/₂, § 11-1202 provided:

> "Every person riding a bicycle upon a roadway shall be granted all of the rights and subject to all of the duties applicable to the driver of a vehicle by this subtitle, except as to special regulations in this part and except as to those provisions of this article which by their nature can have no application." [2]

A bicycle is a vehicle. Even a child's sled is a vehicle, when a person is transported upon it upon a highway. *Moon v. Weeks*, 25 Md. App. 322, 333 A. 2d 635 (1975).

In legal contemplation there was a stop sign at the end of the Schruhl driveway where it entered Crandall Road. James Goff was the operator of the unfavored vehicle. Mrs. Richards was the operator of the favored vehicle. The law required that he stop and yield the right of way to her. He did not.

There can be no doubt of the inexorable application of the boulevard rule in Maryland. In *Creaser v. Owens*, 267 Md. 238, 297 A.2d 235 (1972), Judge Digges wrote for the Court of Appeals, and after noting that the Court had reviewed "the more than fifty opinions * * * which have considered the 'boulevard rule' ", said, at 243-44:

> "The essence of these decisions, when distilled to their purest form, leaves no doubt that the duty of the unfavored driver to yield the right of way extends to traffic on the whole of the favored road and the driver on the favored highway has a right to assume that he will do so. *Dunnill v. Bloomberg*, 228 Md. 230, 179 A. 2d 371 (1962); *Ness v. Males*, 201 Md. 235, 93 A. 2d 541 (1953); *Baltimore Transit Co. v. O'Donovan*, 197 Md. 274, 78 A. 2d 647 (1951). When the operator of a vehicle enters the favored highway in disregard of these explicit and mandatory rules and collides with another vehicle approaching thereon, the collision must be at least

---

2. Acts of 1974, ch. 654, § 1 and ch. 868, § 1, substituted the phrase "in a public bicycle area" for the phrase "upon a roadway".

partially attributed to his negligence. *Blinder v. Monaghan*, 171 Md. 77, 188 A. 31 (1936). It is firmly established in this State that when the 'boulevard rule' is applicable the unfavored driver is negligent as a matter of law when sued or contributorily negligent as a matter of law when suing."

The Court said further, at 245:

"In order to make crystal clear our holding here, we emphasize that if an unfavored driver is involved in an accident with a favored vehicle under circumstances where the boulevard law is applicable then in a suit based on that collision the unfavored driver is deemed to be negligent as a matter of law. And, if the unfavored driver is a plaintiff, his suit is defeated unless the doctrine of last clear chance rescues his claim."

In *Beckward v. Hensel*, 20 Md. App. 544, 316 A. 2d 309 (1974), this Court applied the view that negligence by the favored driver in an intersection accident could be the sole proximate cause, thus making the boulevard rule inapplicable. What we saw as a chink in the armor of the rule was not there. The Court of Appeals granted certiorari, and in *Hansel v. Beckward*, 273 Md. 426, 330 A. 2d 196 (1974), reversed the judgment of this Court. The Court of Appeals said, at 427:

"In *Creaser v. Owens*, 267 Md. 238, 240-41, 297 A. 2d 235 (1972), the most recent case of this Court which discusses Maryland's motor vehicle 'boulevard rule,' Maryland Code (1957, 1970 Repl. Vol.) Art. 66½, § 11-403, we indicated our hope that, with the views expressed there, no longer would this statute give rise to either 'lingering doubts about the absoluteness of its application,' or, other than through legislative enactment, further 'attempts to create new exceptions to it.' The present litigation, however, has dashed this hope, as once again we are faced with a case in which the

application of the 'boulevard rule' is sought to be avoided. Like the Rock of Gibraltar we remain firm and will not allow the legislative mandates contained in this right-of-way statute to be judicially either bypassed or otherwise eroded through new waves of attack."

Further, the Court of Appeals said, at 431:

"In explaining our decision it becomes unnecessary for us now to go back and review each of this Court's prior 'boulevard rule' cases since that has been done by several of our recent opinions, particularly *Creaser.* Consequently, we only encapsulate here what those cases have elaborately said, and then supplement that so as to explicitly encompass the nuance presented by this case. Based on these precedents we hold the 'boulevard' statute to be applicable here. This large group of previous cases makes clear that when the unfavored driver sues, the 'boulevard rule' barring his recovery applies to an accident which occurs between an unfavored driver and the favored motorist on the 'boulevard,' either in the intersection or at a point, though technically outside the intersection, so close to it that the unfavored entering driver interferes with the favored driver's right-of-way into or through the intersection, *Grue et al. v. Collins,* 237 Md. 150, 157, 205 A. 2d 260 (1964), unless, under appropriate circumstances, the unfavored driver is rescued by the doctrine of last clear chance, *Greenfeld v. Hook,* 177 Md. 116, 8 A.2d 888 (1939)."

There is no contention here, nor could there be on the facts, that Mrs. Richards had a last clear chance to avoid the collision.

We hold that the boulevard rule compels the conclusion that as a matter of law James Goff was negligent. We observe that the so-called tender years doctrine involves only a question of how much care constitutes ordinary care

for a child of his age, experience, and intelligence. In a case arising from a bicycle-automobile collision at an intersection where the boulevard rule applied, the Court of Appeals in *Kane v. Williams*, 229 Md. 59, 181 A. 2d 651 (1962), noted only that the infant was above the age at which he could be guilty of negligence, and held that he was negligent as a matter of law. See *Oddis v. Greene*, 11 Md. App. 153, 273 A. 2d 232 (1971). The evidence in this case of the age, experience, and training of James Goff removes from the area of jury determination the question of whether he was able to comprehend and observe the applicable vehicle laws, and rules of safety.

Because recovery in this case is barred by James's negligence, it is not necessary for us to rule whether there was sufficient evidence to permit the jury to consider whether Mrs. Richards was negligent in a manner which constituted a concurring proximate cause of the accident.

The judgments must be reversed.

*Judgments reversed.*
*Appellees to pay costs.*