966 A.2d 955

**Valerie WOOLDRIDGE, et al.**

v.

**Linda D. PRICE, et al.**

**No. 45, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

March 5, 2009.

452

John M. Quinn (Ethidge, Quinn, MacAuliffe, Rowan & Hartinger on the brief), Rockville, for Appellant.

Joan E. Brault (James S. Wilson, Brault Graham, LLC on the brief), Rockville, for Appellee.

Panel: DEBORAH S. EYLER, WOODWARD and FREDERICK J. SHARER (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

Robert H. Wooldridge, Jr. (the "decedent") was killed when the skateboard he was riding was struck by a car in which Richard Price and Linda Price, the appellees, were traveling. In the Circuit Court for Montgomery County, Valerie Wooldridge, the decedent's surviving wife and personal representative of his estate, the appellant, brought a wrongful death and survival action on behalf of herself, their minor children, and the decedent's parents. After discovery was undertaken, the Prices moved for summary judgment. The court granted the motion in a memorandum opinion and order.

Mrs. Wooldridge noted this appeal, presenting three questions for review, which we have reordered and slightly rephrased:

I. Was the circuit court legally correct when it ruled that the decedent was not a pedestrian, that a skateboard is a vehicle, that the boulevard rule applies as a matter of law, and that the decedent was contributorily negligent as a matter of law?

II. Was the circuit court legally correct when it ruled that the doctrine of last clear chance does not apply to the facts in this case, viewed most favorably to the appellant, as a matter of law?

III. Was the circuit court legally correct when it ruled that Mrs. Price was entitled to summary judgment because any dispute over whether she was driving at the time of the accident was not material to the issue of liability?

For the reasons that follow, we shall affirm the circuit court's grant of summary judgment.

## FACTS AND PROCEEDINGS

The accident in this case happened on July 15, 2006. The decedent was 44 years old and was living with his wife and children in a single family residence at 10526 Sweetbriar Parkway, in Silver Spring. The decedent's in-laws (Mrs. Wooldridge's parents) lived across the street at 10545 Sweetbriar Parkway. Jennifer Raymond, Mrs. Wooldridge's sister, lived next door to the decedent.

The Prices lived in a single family residence at 1801 Kimberly Road, in the same neighborhood. Indeed, Kimberly Road begins where Sweetbriar Parkway ends.

The accident happened on Sweetbriar Parkway at approximately 12:49 p.m. The weather was clear and sunny with temperatures in the 80's, the road was dry, and the traffic was light. It was a Saturday. The Prices were on their way to Henderson Hall Marine Barrack to do some shopping and have lunch. Both Mr. and Mrs. Price were 57 years old.

The decedent was on the driveway of his in-laws' house, across the street from his own house. The driveways of the two houses are directly across the street from each other. The decedent had been riding his skateboard down one driveway, across the road, and up the other driveway.

The Prices were proceeding south on Sweetbriar Parkway, at 15 miles per hour, which was less than the posted speed

limit of 25 miles per hour. The accident happened when the decedent, on his skateboard, traveled from his in-laws' driveway into the street, apparently to cross over to his own driveway. The decedent was heading in a westerly direction, meaning that he was approaching the Prices' car from the left, driver's side. The Prices' vehicle struck the decedent in the middle of Sweetbriar Parkway. The decedent ended up underneath the Prices' car, behind the front wheels. He died from the injuries sustained in the accident. The only people present who witnessed the accident were the Prices and the decedent.

According to the Prices, when the accident happened, Mr. Price was driving their car (a 2001 Volvo) and Mrs. Price was sitting in the front passenger seat. She was looking down into her purse and for that reason did not see what happened. Mr. Price saw the decedent come out of a driveway at a rapid speed and in a crouched position and fall down in front of the Prices' car. Mr. Price immediately applied his brakes and tried to turn the car to the right, to no avail.

According to Mrs. Wooldridge, upon hearing the sound of the crash, Jennifer Raymond (her sister), and Jaclyn Leimbach (their mother) ran to the scene, arriving within seconds. Ms. Raymond would testify that she noticed that Mrs. Price was holding car keys in her hand and that she saw Mrs. Price get out of the driver's side of the car, walk around to the back of the car, and lean on the rear driver's side of the car with her head in her hands. Ms. Leimbach would testify that she saw Mr. Price sitting in the front passenger seat of the car and that she saw Mrs. Price walking around the driver's side of the car to the trunk, which she leaned on.

The Montgomery County Police Department investigated the accident and prepared a written report. Mrs. Wooldridge hired Gregory Manning, an accident reconstructionist, who prepared a report about the accident and its cause.

Mrs. Wooldridge filed suit, alleging that her husband's death was the result of negligence on the part of the Prices. Discovery ensued. On December 20, 2007, the Prices filed a

motion for summary judgment, which was supported by a memorandum of law and interrogatory answers by each of them. Mrs. Wooldridge filed an opposition to the motion, supported by affidavits by Ms. Raymond, Mrs. Leimbach, and Mr. Manning. The Manning affidavit attached his report of September 11, 2007. The Prices filed a reply memorandum of law to which they attached the "State of Maryland Motor Vehicle Accident Report" and excerpts from Mr. Manning's deposition.

The court held a hearing on the summary judgment motion on February 5, 2008. Thereafter, on February 8, 2008, it issued a memorandum opinion and order granting summary judgment because: 1) the boulevard rule provision of the Transportation Article governed the accident; 2) under that rule, the decedent was contributorily negligent as a matter of law; 3) if Mrs. Wooldridge were able to generate evidence of negligence on the part of the Prices, her claims nevertheless would be barred by contributory negligence because, as a matter of law, the doctrine of last clear chance did not apply; and 4) whether Mr. Price or Mrs. Price was driving the car at the time of the accident was not a material fact, and therefore the parties' apparent dispute over that fact did not preclude the grant of summary judgment. The order was entered on February 13, 2008.

Mrs. Wooldridge filed a timely notice of appeal. We shall include additional information as necessary to our discussion of the issues.

## STANDARD OF REVIEW

As this Court recently explained, the standard of review for the grant of summary judgment is as follows:

We review a circuit court's decision to grant summary judgment *de novo*. *Crickenberger v. Hyundai Motor America*, 404 Md. 37, 45, 944 A.2d 1136 (2008). Our review is two-fold. First, we determine whether there was or was not a genuine dispute of material fact on the summary judgment record. *Hill v. Cross Country Settlements, LLC*,

402 Md. 281, 294, 936 A.2d 343 (2007). A material fact is a fact that, if found one way or the other, will affect the outcome of the case. *Miller v. Bay City Property Owners Ass'n,* 393 Md. 620, 631, 903 A.2d 938 (2006). Second, if there is no genuine dispute of material fact, we determine whether the party that obtained summary judgment was entitled to judgment in its favor, as a matter of law. *Crickenberger, supra,* 404 Md. at 45, 944 A.2d 1136.

*Zitterbart v. Am. Suzuki Motor Corp.,* 182 Md.App. 495, 501–02, 958 A.2d 372, cert. denied, 406 Md. 581, 961 A.2d 555 (2008).

## DISCUSSION

Mrs. Wooldridge's three questions presented really are three arguments as to why, in her view, the circuit court erred in granting summary judgment in favor of the Prices.

## I.

### *Duty of Care/Application of Boulevard Rule*

■ Mrs. Wooldridge's first argument is that a skateboard is not a "vehicle," within the meaning of the "rules of the road," as set forth in Md.Code (1977, 2006 Repl.Vol.), sections 21–101 *et seq.* of the Transportation Article ("TR"), and therefore the "boulevard rule," one such rule of the road, did not apply. And, even if the boulevard rule did apply, the decedent was not contributorily negligent as a matter of law, and the circuit court's ruling to the contrary was in error. Not surprisingly, the Prices argue the opposite.

■ The portion of the boulevard rule in question here appears in TR section 21–404, which provides, in relevant part:

(a) *Entering highway from other than a highway—Duty to stop.*—The driver of a vehicle about to enter or cross a highway from a private road or driveway or from any other place that is not a highway shall stop.

(b) *Same—Yielding right-of-way.*—The driver of a vehicle about to enter or cross a highway from a private road or

driveway or from any other place that is not a highway shall yield the right-of-way to any other vehicle approaching on the highway.

In the vernacular of the Maryland boulevard rule cases, the driver with the duty to stop and yield the right of way is the "unfavored driver" and the driver with the right of way is the "favored driver." *See, e.g., Wash. Metro. Area Transit Auth. v. Seymour,* 387 Md. 217, 874 A.2d 973 (2005); *Dennard v. Green,* 335 Md. 305, 643 A.2d 422 (1994); *Dean v. Redmiles,* 280 Md. 137, 374 A.2d 329 (1977).

In determining whether the conduct of a person on a skateboard entering a road such as Sweetbriar Parkway from a driveway is controlled by the boulevard rule, we must consider the definitions of pertinent terms, as set forth in the Transportation Article. A "highway" is "the entire width between the boundary lines of any way or thoroughfare of which any part is used by the public for vehicular travel, whether or not the way or thoroughfare has been dedicated to the public and accepted by any proper authority." TR § 11–127. A "driver" is "any individual who drives a vehicle." TR § 11–115. To "drive" is "to drive, operate, move, or be in actual physical control of a vehicle." TR § 11–114. A "vehicle" is (with an exception not applicable here) "any device in, on, or by which any individual or property might be transported or towed on a highway." TR § 11–176(a)(1). It includes a "low speed vehicle." TR § 11–176(b).[1]

 Sweetbriar Parkway meets the definition of a "highway" in TR section 11–127. The decedent was entering that highway from a driveway. Therefore, if the decedent was a "driver" and the skateboard he was riding was a "vehicle," his duty of care was governed by TR section 21–404, *i.e.,* he was required to stop at the end of the driveway and, before entering the road, yield the right of way to the Prices' car.

---

1. The exception is for "an electric personal assistive mobility device as defined in [TR] § 21–101(j)." TR § 11–176(b). It is not disputed that the skateboard the decedent was riding at the time of the accident was not such a device.

Because "drive" includes moving or being in physical control of a vehicle, the decedent was driving the skateboard if his skateboard was a "vehicle." In other words, the world of drivers is not limited to those who are driving cars, trucks, or other devices commonly known as vehicles; it includes those who are moving or in physical control of any device that meets the definition of "vehicle."

The question then is whether a skateboard is a device on which a person is or "might be transported." TR § 11–176(a)(1). Two cases decided quite some time ago, but interpreting the same statutory language, offer guidance on this point. In *Moon v. Weeks*, 25 Md.App. 322, 333, 333 A.2d 635 (1975), this Court held that a sled is a " 'vehicle' when a person is transported upon it upon a highway." A few months later, in *Richards v. Goff*, 26 Md.App. 344, 338 A.2d 80 (1975), we likewise held that a bicycle is a vehicle. These decisions rested upon the plain language of the statutory definition of "vehicle" as quoted above (with only minor changes to the definition over the years).

Mrs. Wooldridge points out that courts in two of our sister states have held that devices such as skateboards are not vehicles, and argues that we should follow suit. These cases are distinguishable. In *State v. Smith*, 184 Or.App. 118, 55 P.3d 553 (2002), the Oregon Court of Appeals held that a skateboard a person was riding on a sidewalk was not a vehicle. That state's statutory definition of "vehicle" is roughly the same as Maryland's definition of that term. However, Oregon exempts from the "vehicle" category devices propelled exclusively by human power. The court held that a skateboard is covered by that exemption, and therefore is not a vehicle. It is clear that the holding would have differed if the exemption did not exist; and in Maryland, no such exemption exists. In *Schallenberger v. Rudd*, 244 Kan. 230, 767 P.2d 841 (1989), the court held that that state's rules of the road allow bicycles to be driven on sidewalks, and therefore require drivers to yield to bicycle riders in crosswalks. The case is inapposite as it does not involve transportation by bicycle or

any other self-propelled device upon a highway and it concerns riding in crosswalks, which is not at issue here.

Accordingly, we agree with the circuit court that, as a matter of law, the skateboard the decedent was riding in this case was a "vehicle," and therefore he was an unfavored driver under the boulevard rule. It is undisputed that the decedent rode the skateboard to the end of his in-laws' driveway and entered Sweetbriar Parkway without stopping, in violation of TR section 21–404(a); and that he entered Sweetbriar Parkway without yielding the right of way to the Prices, who were the favored drivers, in violation of TR section 21–404(b).

Mrs. Wooldridge argues, however, that, because the evidence to be adduced at trial would show that the decedent fell off the skateboard in front of the Prices' car, then at the time he was struck he was a pedestrian, not a skateboard driver. There is no merit in this argument. Whether the decedent complied with the duty of care created by the boulevard rule must be determined based upon his conduct when he arrived at the end of his in-laws' driveway and entered the street. At that point, he was riding the skateboard and was not a pedestrian, which the Transportation Article defines as "an individual afoot." TR § 11–145. Indeed, under any interpretation of the facts, the decedent was never afoot, and therefore was not a pedestrian. We note that in *Moon, supra,* we observed that a child who was getting off her sled when she was hit by a car was not a pedestrian. *Moon, supra,* 25 Md.App. at 333 n. 10, 333 A.2d 635.

Clearly, by violating the boulevard rule, the decedent engaged in conduct that did not comport with his duty of care, and therefore was contributorily negligent as a matter of law. *See Richards v. Goff, supra,* 26 Md.App. 344, 338 A.2d 80.

## II.

### Last Clear Chance Doctrine

In Maryland, contributory negligence on the part of a plaintiff completely bars recovery against a negligent defen-

dant. *See May v. Giant Food, Inc.*, 122 Md.App. 364, 375, 712 A.2d 166 (1998); *Richards, supra,* 26 Md.App. 344, 338 A.2d 80. In survival actions and wrongful death actions, contributory negligence of the decedent is a bar to recovery against a negligent defendant. *See Smith v. Gross,* 319 Md. 138, 144, 571 A.2d 1219 (1990); *Dehn v. Edgecombe,* 152 Md.App. 657, 694–97, 834 A.2d 146 (2003), *aff'd,* 384 Md. 606, 865 A.2d 603 (2005). Thus, in the case at bar, even if Mrs. Wooldridge could adduce some evidence of negligence on the part of the Prices, her claims against them would be barred.

▮▮▮ In some contributory negligence situations, however, the doctrine of last clear chance can apply to allow recovery.

[T]he doctrine of last clear chance permits a contributorily negligent plaintiff to recover damages from a negligent defendant if each of the following elements is satisfied: (i) the defendant is negligent; (ii) the plaintiff is contributorily negligent; and (iii) the plaintiff makes "a showing of something new or sequential, which affords the defendant a fresh opportunity (of which he fails to avail himself) to avert the consequences of his original negligence."

*Burdette v. Rockville Crane Rental, Inc.,* 130 Md.App. 193, 216, 745 A.2d 457 (2000) (quoting *Liscombe v. Potomac Edison Co.,* 303 Md. 619, 638, 495 A.2d 838 (1985)). "The theory behind the doctrine is that 'if the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a "proximate cause" of the result.'" *Id.* at 215, 745 A.2d 457 (quoting W. PROSSER, LAW OF TORTS, § 66 (4th ed.1971)).

"A fresh opportunity" is the operative phrase, for the doctrine will apply only if "the acts of the respective parties [were] sequential and not concurrent." *Id.* at 216, 745 A.2d 457. In other words, the defendant must have had a chance to avoid the injury after plaintiff's negligent action was put in motion. The doctrine "assumes" that, after the primary negligence of the plaintiff and defendant, "the defendant could, and the plaintiff could not, by the use of the means available avert the accident." *United Rys. & Elec. Co. v. Sherwood Bros.,* 161 Md. 304, 310, 157 A. 280 (1931). In

this way, the defendant should have recognized and responded to the plaintiff's position of "helpless peril." *Baltimore & O.R. Co. v. Leasure,* 193 Md. 523, 534, 69 A.2d 248 (1949).

*Carter v. Senate Masonry, Inc.,* 156 Md.App. 162, 168–69, 846 A.2d 50 (2004) (some citations omitted).

The Maryland last clear chance case that is most like the case at bar is *Quinn v. Glackin,* 31 Md.App. 247, 355 A.2d 523 (1976). There, when a 12–year–old girl rode her bicycle down her driveway and into the street, she was hit by a car and sustained serious injuries. The child's parents brought suit for negligence on her behalf against the driver. The child had no memory of the accident and could not testify about what had happened. The driver testified that he first saw the child 9 or 10 feet from the edge of the road, right before the impact. In affirming the grant of a directed verdict, we stated:

> If the evidence in this case was sufficient to show any negligence at all on [the driver's] part ... then it was original negligence which continued, and concurred with the admitted negligence of [the child] to cause her injury.
>
> There could be no fresh opportunity available to [the driver] to avoid the consequences of [the child's] negligence until she did something negligent. Her approach down the driveway was not negligent, and did not then place her in a position of peril. Her lawful approach could not constitute notice to [the driver] that she would fail to yield the right of way to him. A motorist on the favored highway has the right to assume that the unfavored driver will yield the right of way.
>
> [The child's] negligence—her failure to yield the right of way to a motorist on the favored highway—was followed almost instantaneously by the accident. The trial judge correctly ruled that there was no evidence to show that [the driver] had a last clear chance to avoid the accident.

*Id.* at 254, 355 A.2d 523 (citation omitted).

So too, in this case, all of the forecasted evidence, including Mr. Manning's affidavit and report, had the impact

happening almost instantaneously after the decedent negligently failed to yield the right of way at the edge of the driveway. Indeed, the opinion Mr. Manning offered as to negligence on the part of the Prices was that, notwithstanding that the driveway in question was lined by bushes and plants, the driver of the Price vehicle should have been able to see (peripherally) the decedent intermittently, between the shrubs, as he rode down the driveway, and therefore should have brought the vehicle to a stop, thus avoiding the impact. Even if these facts could show negligence by the Prices (for, as this Court explained in *Quinn, supra,* the unfavored driver is not negligent until he fails to yield the right of way, and not before), they cannot show that the decedent was in a position of helpless peril with the Prices having a fresh opportunity to exercise due care to avoid striking him. Any negligence on the part of the Prices was one brief but continuing event that, combined with the decedent's own negligence, caused this tragic accident. As a matter of law, the doctrine of last clear chance has no application on these facts.

### III.

### *Driver's Identity*

Finally, Mrs. Wooldridge argues that the circuit court should not have granted summary judgment because there was a genuine dispute of material fact as to the identity of the driver when the accident occurred. The Prices would testify that Mr. Price was driving. Mrs. Wooldridge's sister and mother would testify to facts they observed immediately after the accident that could give rise to a reasonable inference that Mrs. Price was the driver.

The circuit court explained that this dispute of fact, even if genuine, is not material, and therefore does not preclude the grant of summary judgment. We agree. A fact is "material" for summary judgment purposes if its determination one way or the other will have an effect on the outcome of the case. *Miller v. Bay City Prop. Owners Ass'n,* 393 Md. 620, 631, 903 A.2d 938 (2006) (quoting *United Serv. Auto.*

*Ass'n v. Riley,* 393 Md. 55, 67, 899 A.2d 819 (2006)); *Fearnow v. Chesapeake & Potomac Tel. Co. of Md.,* 104 Md.App. 1, 49, 655 A.2d 1 (1995) (quoting *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985)), *rev'd on other grounds,* 342 Md. 363, 676 A.2d 65 (1996). Here, as a matter of law, the decedent was contributorily negligent and the doctrine of last clear chance does not apply. Regardless of which of the Prices was driving, Mrs. Wooldridge's wrongful death and survival claims are barred. Therefore, whether Mr. Price was driving or Mrs. Price was driving is not a factual finding that will make a difference in the outcome of the case. As the identity of the driver is not a material fact, the court was free to grant summary judgment even though the fact was in dispute.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**